[L.A. No. 30741. Oct. 11, 1977.]

JOSEPH R. STEINER, Plaintiff and Respondent, v.
MOBIL OIL CORPORATION, Defendant and Appellant.

**COUNSEL**

McCutchen, Black, Verleger & Shea, Max K. Jamison, Jack D. Fudge, David A. Destino and Nelson S. Anthony for Defendant and Appellant.

Joseph A. Lazaroni and Stanley Sapiro for Plaintiff and Respondent.

**OPINION**

**TOBRINER, J.**—In this case, over one year after apparently accepting plaintiff's offer, the Mobil Oil Corporation sought to impose upon plaintiff the very contractual terms which plaintiff expressly rejected in his offer. As justification for its conduct, Mobil asserted that the crucial provision of plaintiff's offer was lost in the labyrinth of the Mobil bureaucracy, and thus that Mobil decisionmakers had no opportunity to pass on plaintiff's offer as such. ■ As we shall see, however, the trial court correctly concluded that section 2207 of the California Uniform Commercial Code[1] bars Mobil from in this way converting its own error into plaintiff's misfortune.

Section 2207, subdivision (1), provides that parties may form an agreement, even if the terms of offer and acceptance do not entirely converge, if the offeree gives a definite expression of acceptance, and if

---

[1]See *Goldie* v. *Bauchet Properties* (1975) 15 Cal.3d 307, 314-315 [124 Cal.Rptr. 161, 540 P.2d 1]. Unless otherwise indicated all statutory citations hereinafter refer to the California Uniform Commercial Code.

the terms of acceptance do not explicitly condition agreement upon the offeror's consent to the offeree's new proposed terms. In this case, as the trial court found, defendant Mobil did not condition its acceptance of plaintiff's offer upon plaintiff's agreement to Mobil's alteration of plaintiff's offer and thus a contract was formed. Section 2207, subdivision (2), provides in turn that, if the terms of the offer and acceptance differ, the terms of the offer become part of a contract between merchants if the offer expressly limits acceptance to its own terms, or if the varying terms of the acceptance materially alter the terms of the offer. As the trial court found, under either of these clauses, the terms of Steiner's offer must prevail, because Steiner's offer was expressly conditional upon Mobil's agreement to provide a guaranteed discount, and Mobil's substitution of a discount terminable at its discretion materially affected Steiner's interests.

Accordingly, the trial court did not err in granting judgment for plaintiff, and we shall thus affirm its judgment.

### 1. The facts in this case

Defendant Mobil Oil Corporation,[2] in appealing from a judgment for plaintiff Steiner, does not challenge the facts as found by the trial court, but rather confines itself to an attack on the trial court's conclusions of law. The facts in this case, thus, are not in dispute.

Joseph R. Steiner is an independent service station operator. He purchases the gasoline which he sells from Mobil, but, except for any incidental rights which the gasoline contract confers, Mobil owns no interest in Steiner's property.

In 1971, the third party who leased the service station property to Steiner informed him that the property was for sale. Steiner contacted Mobil sales representative Tony Montemarano. Montemarano informed Steiner that Mobil would not purchase the property, but that Mobil was interested in assisting Steiner in making the purchase.

Thereafter, Steiner entered into extended negotiations with J. S. Chenen, Mobil's area manager and Montemarano's superior. Steiner and Chenen agreed that Mobil would supply the down payment on the

[2]Plaintiff originally named Mobil employee J. S. Chenen as a second defendant in this case. The trial court, however, entered judgment for Chenen, and plaintiff does not appeal.

property, amounting to $30,000. In return, Steiner would enter into a 10-year contract with Mobil. The contract would treat the cash advance as a prepaid competitive allowance, to be amortized over the 10-year period through Steiner's purchase of 5.8 million gallons of gasoline.

The negotiations did not terminate with the agreement concerning the down payment. Steiner had concluded that he would not be able to do business successfully if he were compelled to purchase gasoline from Mobil at the standard tank wagon price. As the trial court found, Steiner told Chenen that he, Steiner, "needed a firm competitive allowance for the length of his distributor's agreement to make his cash flow adequate to meet the payments on the property." Steiner and Chenen agreed that a satisfactory arrangement with Mobil would include not only the $30,000 prepaid competitive allowance, but also a further competitive allowance reducing Mobil's tank wagon price by 1.4 cents per gallon. Mobil would also supply Steiner with $3,000 worth of improvements.

As Chenen made clear to Steiner, neither Chenen nor his immediate supervisor, district manager D. L. Dalbec, possessed the authority to accept the negotiated terms on Mobil's behalf. The negotiations therefore did not culminate in an agreement as such but rather in a proposal to be submitted to R. D. Pfaff, the division general manager, who did possess authority to agree to the proposal on Mobil's behalf.

Moreover, the proposal did not take the form of a documented single contract. Chenen and Steiner utilized a series of standard Mobil forms in putting together the proposal, modifying the forms where necessary. Steiner signed those of the forms, such as the basic retail dealer contract, which required his signature. The package of documents which comprised the proposal, therefore, needed only Pfaff's approval to become effective.

Near the close of the process of negotiating and assembling the proposal, Steiner obtained a copy of the standard Mobil form which would embody the 1.4 cents per gallon competitive allowance. This form, which did not require Steiner's signature, stated: "This allowance may be changed or discontinued by us at any time upon notice to you in writing. . . ." Upon receipt of the form Steiner immediately contacted Chenen by telephone, told Chenen that he would not go ahead with the deal if Mobil could revoke the competitive allowance at any time, and demanded assurances that no such revocation would occur.

In order to placate Steiner, Chenen, after consultation and authorization from Dalbec, sent Steiner a letter, dated December 2, 1971, which declared "[¶] The ten year Retail Dealer Contract dated December 15, 1971, effective January 1, 1972, is signed by you on the basis that Mobil grant a $30,000 Prepaid Competitive Allowance, and a *$.014 Competitive Allowance at time of delivery.* [¶] If Mobil management does not accept in full the above conditions outlined in your competitive offer, the above mentioned contract will be void." (Italics added.)

The trial court found that "Chenen was authorized by Mobil to write the letter" to Steiner. Moreover, as the trial court also found, because of the letter, "through . . . Chenen and Dalbec Mobil had both knowledge and notice" of Steiner's demand for a guaranteed competitive allowance. "Mobil had reason to know that the transaction and agreement would be materially affected and that plaintiff would not enter therein if [the guaranteed discount] term was not part of the 'package.' " The trial court further concluded that, for Chenen and Dalbec, the transmission of Steiner's offer to division general manager Pfaff "was part of their regular duties" and thus that Chenen and Dalbec "were obligated, in the exercise of good faith and ordinary care and diligence, to communicate the substance of plaintiff's [offer] to Pfaff."

In fact, however, Chenen and Dalbec did *not* transmit to Pfaff the letter which Chenen had sent to Steiner; Mobil's copy of that letter remained in the district office files. In preparing the proposal for submission to Pfaff, Chenen and Dalbec assembled a package which included the various documents that Steiner had executed, the standard form providing the revocable 1.4 cents per gallon competitive allowance, and various memoranda explaining the advantages of the deal for Mobil. Early in 1972, several months after Chenen and Dalbec had transmitted the proposal to him, Pfaff approved it as submitted.

Chenen informed Steiner of Pfaff's approval by telephone. Steiner had called Chenen to find out what was happening with the proposal which they had negotiated. Chenen told Steiner that Mobil had a check for him, and that the next thing for Steiner to do was to *open an escrow account* and *proceed with the purchase of the property.*

Subsequently, Montemarano delivered to Steiner at his service station a manila folder containing the documents approved by Pfaff. These documents, the trial court found, were "numerous and complex in nature." Nonetheless, there was no cover letter describing the contents of

the folder. Although the folder included Mobil's standard competitive allowance form, with its clause providing for revocation at will, Montemarano did not call this fact to Steiner's attention.

Thus, as the trial court found, at no time after Chenen sent Steiner the December 2 letter "did Mobil advise [Steiner] that a non-cancellable allowance would not be part of the agreement." Moreover, Steiner "did not at any time reread all of the documents delivered to him by Mobil, particularly the form letter . . . setting forth the provision regarding the 1.4 cents per gallon competitive allowance being cancellable." Mobil did not "specifically bring" to Steiner's attention "the statements made in the form letter . . . concerning the cancellable condition of the competitive allowance."

By April 1972, Steiner had completed the process of acquiring the service station property. Beginning in March, Mobil afforded Steiner the benefit of the 1.4 cents per gallon competitive allowance in billing him for gasoline and continued to do so until the summer of 1973. On July 16, 1973, Chenen informed Steiner by letter that, in accordance with the provisions of Mobil's notice of competitive allowance, Mobil would reduce Steiner's discount to 0.5 cents per gallon as of August 1, 1973.

Steiner brought this suit in the Los Angeles County Superior Court, seeking declaratory and monetary relief. The trial court, sitting without a jury, found that Mobil "had reason to know" that Steiner would not enter into an agreement unless Mobil agreed that he "was to have a non-cancellable . . . competitive allowance . . . to run as long as the distributor agreement was in force." Moreover, the trial court found, in returning the package of documents to Steiner, "Mobil intended to make a contract, not to make a counter offer." The trial court concluded that "in the exercise of good faith and reasonable care and diligence Mobil was required to specifically bring to the attention of plaintiff the statements made in the form letter sent by Dalbec concerning the cancellable condition of the competitive allowance."

The trial court ruled that, under California Uniform Commercial Code section 2207, Mobil had entered into a contract with Steiner which guaranteed Steiner a 1.4 cents per gallon discount for 10 years. "Mobil made a definite and seasonable expression of acceptance of plaintiff's offer, although its reply contained a material term different from that offer." Moreover, "[i]n accepting plaintiff's offer Mobil did not either orally or in writing expressly condition its acceptance upon plaintiff's

assent to the different terms as to the competitive allowance in Mobil's acceptance." The trial court granted Steiner a declaratory judgment to that effect, and awarded Steiner damages of $4,953.63. Mobil appeals the trial court's judgment.

2. *Under California Uniform Commercial Code section 2207, Steiner's contract with Mobil grants Steiner a 1.4 cents per gallon discount for the duration of the contract..*

Neither Mobil nor Steiner disputes the trial court's conclusion that the sales provisions of the California Uniform Commercial Code apply in this case.[3] Moreover, Mobil and Steiner do not challenge the trial court's conclusion that the outcome of this case turns on the applicability of section 2207.[4] As we shall see, the relevant provisions of that statute confirm the trial court's conclusion that Mobil breached its agreement with Steiner when it unilaterally reduced Steiner's competitive discount. Initially, we shall identify the considerations which underlie section 2207 and thus structure our interpretation of the statute. Thereafter, we shall proceed to the application of section 2207 itself.

[3]Section 2102 states that "this division applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction. . . ." Section 2105 defines "goods" as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale. . . ." The gasoline which Steiner agreed to purchase from Mobil plainly falls within that definition. (See, e.g., *Amoco Pipeline Co.* v. *Admiral Crude Oil Corp.* (10th Cir. 1974) 490 F.2d 114, 116 [crude oil]; *Oskey Gasoline and Oil Company* v. *OKC Refining Inc.* (D.Minn. 1973) 364 F.Supp. 1137, 1141, fn. 2 [gasoline and fuel oil].) Although Mobil and Steiner entered into certain security agreements as part of their deal, the deal did not operate "only as a security transaction"; if the parties entered into any agreement at all, that agreement plainly established rights and duties which could be enforced without invocation of the security agreements. (See *Associates Disct. Corp.* v. *Palmer* (1966) 47 N.J. 183 [219 A.2d 858, 861]; see also *Ashland Oil, Inc.* v. *Donahue* (1976) — W.Va. — [223 S.E.2d 433, 440].)

[4]Section 2207 provides in full: "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) The offer expressly limits acceptance to the terms of the offer;

"(b) They materially alter it; or

"(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code."

Under traditional common law, no contract was reached if the terms of the offer and the acceptance varied. "In order to make a bargain it is necessary that the acceptor shall give in return for the offeror's promise *exactly* the consideration which the offeror requests." (1 Williston, The Law of Contracts (1st ed. 1920) § 73, p. 128 [italics added].) This "mirror image" rule of offer and acceptance was plainly both unfair and unrealistic in the commercial context. "The fact that the parties did intend a contract to be formed and both had a reasonable commercial understanding that the deal was closed, is ignored." (Murray, *Intention Over Terms: An Exploration of UCC 2-207 and New Section 60, Restatement of Contracts* (1969) 37 Fordham L.Rev. 317, 319.)

Section 2207 rejects the "mirror image" rule. (See, e.g., *Roto-Lith, Ltd.* v. *F. P. Bartlett & Co.* (1st Cir. 1962) 297 F.2d 497, 500.) "This section of the Code recognizes that in current commercial transactions, the terms of the offer and those of the acceptance will seldom be identical." (*Dorton* v. *Collins & Aikman Corp.* (6th Cir. 1972) 453 F.2d 1161, 1166.)

Under section 2207, for example, the parties may conclude a contract despite the fact that, after reaching accord, they exchanged forms which purport to memorialize the agreement, but which differ because each party has drafted his form "to give him advantage." (White & Summers, Uniform Commercial Code (1972) p. 23; see, e.g., *Rite Fabrics, Inc.* v. *Stafford-Higgins Co., Inc.* (S.D.N.Y. 1973) 366 F.Supp. 1.) Similarly, the parties may form a contract even if the terms of offer and acceptance differ because one or the other party, in stating its initial position, relies upon "forms drafted to cover the majority of [its] transactions in a uniform, standard manner" (Duesenberg & King, Sales and Bulk Transfers under the Uniform Commercial Code (1976) § 3.02, p. 3-9), and subsequently fails to amend its form to reflect the deal which the other party claims was actually negotiated. (See, e.g., *Ebasco Services Inc.* v. *Pennsylvania Power & L. Co.* (E.D.Pa. 1975) 402 F. Supp. 421, 434-435.)

In place of the "mirror image" rule, section 2207 inquires as to whether the parties intended to complete an agreement: "Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract." (§ 2207, Cal. U. Com. Code, com. 2.) If the parties intend to contract, but the terms of their offer and acceptance differ, section 2207 authorizes a court to determine which terms are part of the contract, either by reference to the parties' own

dealings (see § 2207, subds. (1), (2)), or by reference to other provisions of the code. (See § 2207, subd. (3).)

Section 2207 is thus of a piece with other recent developments in contract law. Instead of fastening upon abstract doctrinal concepts like offer and acceptance, section 2207 looks to the actual dealings of the parties and gives legal effect to that conduct. Much as adhesion contract analysis teaches us not to enforce contracts until we look behind the facade of the formalistic standardized agreement in order to determine whether any inequality of bargaining power between the parties renders contractual terms unconscionable, or causes the contract to be interpreted against the more powerful party, section 2207 instructs us not to *refuse* to enforce contracts until we look below the surface of the parties' disagreement as to contract terms and determine whether the parties undertook to close their deal. Section 2207 requires courts to put aside the formal and academic stereotypes of traditional doctrine of offer and acceptance and to analyze instead what really happens. In this spirit, we turn to the application of section 2207 in this case.

Section 2207, subdivision (1), provides: "A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

In this case, as the trial court found, Mobil provided "[a] definite and seasonable expression of acceptance." Steiner offered to enter into a 10-year dealer contract with Mobil only if Mobil, among other things, agreed to advance Steiner $30,000, and to give Steiner a 1.4 cents per gallon competitive discount on the price of Mobil gasoline for the duration of the contract. When Steiner telephoned Chenen, Mobil's employee, to inquire as to the fate of Steiner's offer, *Chenen told Steiner that Mobil had a check for him, that he should open an escrow account, and that he should go ahead with the purchase of the service station property*—in context a clear statement that Mobil had approved the deal.

Moreover, through Montemarano, another Mobil employee, Mobil returned to Steiner various executed documents in an envelope unaccompanied by any cover. The documents provided written confirmation of the deal. The fact that Mobil returned the documents without in any

way calling Steiner's attention to them is further evidence that Mobil regarded the process of negotiation as over and the deal as complete.

As the trial court also found, Mobil did not in any way make its acceptance "expressly . . . conditional" on Steiner's "assent to the additional or different terms." Chenen, in telling Steiner to go ahead with the purchase, did not suggest that Mobil had conditioned its acceptance. In returning the executed documents, Mobil enclosed no cover letter; again, it did not use the occasion in any way to condition expressly its acceptance.

Thus, neither of the restrictions which limit section 2207, subdivision (1)'s application are relevant in this case. Despite the fact that the terms of Mobil's acceptance departed partially from the terms of Steiner's offer, Mobil and Steiner did form a contract. To determine the terms of this contract, we turn to section 2207, subdivision (2).

Section 2207, subdivision (2), provides: ". . . additional te ms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: [¶] (a) The offer expressly limits acceptance to the terms of the offer; [¶] (b) They materially alter it; or [¶] (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

Under section 2207, subdivision (2), Mobil's revocable discount provision does *not* become part of the agreement between Steiner and Mobil. In order to become part of the agreement, Mobil's provision must not fall within *any* of the categories defined by section 2207, subdivision (2), subsections (a), (b), and (c). Mobil's term, however, clearly comes within subsections (a) and (b).

Subsection (a) provides that no additional term can become part of the agreement if Steiner's offer "expressly limit[ed] acceptance to the terms of the offer." (§ 2207, subd. (2)(a).) Mobil concedes that Steiner's offer provided that the competitive allowance of 1.4 cents per gallon would run for the full length of the 10-year dealer contract. Chenen's December 2 letter to Steiner explicitly acknowledges Mobil's awareness that "[i]f Mobil management does not accept in full the above conditions outlined in your competitive offer, the above mentioned contract is void."

Moreover, Mobil's acceptance falls within subsection (b) since without question the acceptance "materially alter[ed]" the terms of Steiner's

offer. (See § 2207, subd. (2)(b).) The Uniform Commercial Code comment notes that a variation is material if it would "result in surprise or hardship if incorporated without express awareness by the other party. . . ." (§ 2-207, U. Com. Code, com. 4.) Here, Steiner clearly indicated to Mobil in the course of the negotiations that, without the 1.4 cents per gallon discount, he could not economically operate the service station. Mobil's alteration, therefore, amended the terms of the offer to Steiner's significant detriment; accordingly, the alteration was necessarily "material."

To reiterate, subsections (a), (b), and (c) of section 2207, subdivision (2), operate in the alternative. If any one of the three subsections applies, the variant terms of an acceptance do not become part of an agreement. Here, as we have seen, the provisions of both subsections (a) and (b) are met. Mobil's declaration that the 1.4 cents per gallon discount was terminable at Mobil's discretion did not become part of the contract. Instead, Steiner and Mobil formed a contract incorporating the terms of Steiner's offer: Under this contract, Steiner was guaranteed a 1.4 cents per gallon discount throughout the 10-year period of the dealer contract.[5]

---

[5]The parties do not challenge the finding of the trial court that both Steiner and Mobil are "merchants" within the meaning of section 2104, subdivision (1), and thus within the meaning of section 2207, subdivision (2), as well. Moreover, the parties do not argue that the applicability of section 2207, subdivision (2), subsections (a), (b), and (c) turns on whether the terms of Mobil's acceptance were additional to, or instead different from, Steiner's offer. Despite the parties' agreement in this case, however, the question of the relevance of the distinction between "additional" and "different" terms has become a matter of some controversy among courts and commentators.

Section 2207, subdivision (1), refers to acceptances in which terms are either "additional to or different from" the terms of an offer. Section 2207, subdivision (2), however, expressly concerns itself with only "additional terms." Noting this difference, several courts and commentators have concluded that section 2207, subdivision (2), applies if an acceptance *adds* terms to an offer, but does not apply if an acceptance *alters* the terms of an offer. (See, e.g., *American Parts Co., Inc.* v. *American Arbitration Ass'n* (1967) 8 Mich.App. 156 [154 N.W.2d 5, 11]; Duesenberg & King, *supra*, § 3.03[1], pp. 3-33 to 3-38.) Other courts and commentators, however, suggest that section 2207, subdivision (2), applies without regard to whether the varying terms of an acceptance differ from or add to an offer. (See, e.g., *Ebasco Services Inc.* v. *Pennsylvania Power & L. Co.*, *supra*, 402 F.Supp. 421, 440 & fn. 27; Comment, *Section 2-207 of the Uniform Commercial Code—New Rules for the "Battle of the Forms"* (1971) 32 U.Pitt.L.Rev. 209, 211.)

We conclude that the applicability of section 2207, subdivision (2), should not turn upon a characterization of the varying terms of an acceptance as "additional" or "different." First, Uniform Commercial Code comment 3 specifically states that "[w]hether or not additional *or different* terms will become part of the agreement depends upon the provisions of subsection (2)." (Italics added; see also UCC com. 2.) Second, the distinction between "additional" and "different" terms is ambiguous. Since an offer's silence with respect to a particular issue may indicate an intent to adopt the code's gap-filling provisions, even an acceptance term which at first

Thus, on their face, subdivisions (1) and (2) of section 2207 confirm the trial court's conclusion that Mobil breached its agreement with Steiner. We now turn to Mobil's opposing argument that we should adopt an interpretation of section 2207 which conflicts with the trial court's conclusion.

3. *Contrary to Mobil's argument, California Uniform Commercial Code sections 2204 and 2207 do not incorporate the traditional rule that parties to a contract must mutually assent to all essential terms.*

We set forth Mobil's contentions, which, although elaborately developed, can be simply stated. Section 2207 does not apply if the general contract formation rules of section 2204 are not met. Section 2204 does not change the traditional rule that, in order to create an enforceable contract, the parties must mutually assent to all essential terms of the supposed agreement. In order to square section 2207 with section 2204, Mobil argues, we must construe section 2207, subdivision (1), to provide that there is no "definite" acceptance unless the parties agree to all essential terms. Moreover, Mobil contends, we must also hold that, under the same section, an acceptance which alters an essential term of an offer is an acceptance "expressly made conditional on assent" to the variant term. Finally, Mobil concludes that, since its acceptance, in changing the duration of the discount, modified an essential term of Steiner's offer, i.e., price, we must find that Steiner cannot claim a continued discount.

As we shall explain, Mobil's arguments do not survive scrutiny. The official comments accompanying section 2204, other provisions of the code, and the case law interpreting section 2204, all support the conclusion that section 2204 does not require mutual assent to all essential terms. Mobil's interpretations of the definite agreement and conditional acceptance provisions of section 2207, subdivision (1), likewise conflict with other subdivisions of section 2207.

glance appears to be plainly "additional" is at least arguably "different." (See *Air Products & Chem., Inc.* v. *Fairbanks Morse, Inc.* (1973) 58 Wis.2d 193 [206 N.W.2d 414, 424].) Third, the distinction between additional and different terms serves no clear purpose. If additional and different terms are treated alike for purposes of section 2207, subdivision (2), an offeror does not, as some contend, lose "the ability to retain control over the terms of his offer." (Duesenberg & King, *supra*, at p. 3-37.) Under section 2207, subdivision (2), if the offeror wishes to retain such control, he may do so by framing his offer so that it "expressly limits acceptance to the terms of the offer. . . ." (§ 2207, subd. (2)(a).)

a. ■ *California Uniform Commercial Code section 2204 does not incorporate the traditional requirement of mutual assent to all essential terms.*

Section 2204 incorporates three subdivisions.[6] The third of these subdivisions directly refutes Mobil's claims. "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." (§ 2204, subd. (3).)

Section 2204, subdivision (3), does not, by its terms, require parties to a contract to assent to *all* essential terms. Instead, this provision states that a court, if it is to enforce a contract, must first make two findings. Initially, the court must find some basis for concluding that the parties engaged in a process of offer and acceptance, rather than inconclusive negotiations. Second, the court must find that it possesses sufficient information about the parties' incomplete transaction to apply the provisions of the California Uniform Commercial Code which fill in the gaps in parties' contracts.[7] As we have already seen, both of these minimal requirements are met in this case: the parties did not engage in inconclusive negotiations, and section 2207 readily fills in the terms of their contract.

To overcome the literal language of section 2204, subdivision (2), Mobil argues that the traditional requirement of "a meeting of the minds upon the essential features of the agreement" (*Ellis* v. *Klaff* (1950) 96 Cal.App.2d 471, 478 [216 P.2d 15]; see *Roffinella* v. *Roffinella* (1923) 191 Cal. 753, 758 [218 P. 397]) is so fundamental that the code could not conceivably have rejected it. The California code comment, however, explicitly states: " '[A] meeting of the minds on the essential features of the agreement' is not required. . . ." (§ 2204, com. 2.)

[6]Section 2204 provides in full: "(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

"(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

"(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

[7]These provisions, of course, include section 2207; they also include, for example, section 2305, which deals with open price terms, section 2307, which fixes otherwise open delivery provisions, and section 2309, which sets a duration for otherwise indefinite contracts.

Other code provisions sustain the comment's view. As we have already pointed out, section 2207, subdivision (2)(b), expressly acknowledges the possibility that parties may reach a contract without agreeing to all "material" terms. Mobil does not attempt to distinguish "material" from "essential" terms; in any event, we do not think that it could successfully do so. Section 2305, subdivision (1), provides an even more dramatic refutation of Mobil's argument. As we have noted, Mobil treats price as an "essential" term. Nonetheless, this section states: "The parties if they so intend can conclude a contract for sale even though the price is not settled." (§ 2305, subd. (1).)

The case law interpreting section 2204 reinforces the interpretation offered by the code comment and the implication of other code provisions: the rules of contract formation under the California Uniform Commercial Code do not include the principle that the parties must agree to all essential terms in order to form a contract. Courts have held that, under section 2204, subdivision (3), parties may form a contract even though they do not agree as to the terms of payment (*Southwest Engineering Co.* v. *Martin Tractor Co.* (1970) 205 Kan. 684 [473 P.2d 18, 23-24]), the time or place for performance (*Taunton* v. *Allenberg Cotton Company, Inc.* (M.D.Ga. 1973) 378 F.Supp. 34, 39), or the quantity of the goods sold (*City of Louisville* v. *Rockwell Manufacturing Co.* (6th Cir. 1973) 482 F.2d 159, 164)—all terms which might appear to be "essential" to an agreement.

More significantly, in view of Mobil's emphasis on the essential character of price terms, a number of courts have held that, under section 2204, subdivision (3), the parties may frame a contract without fully agreeing as to price. (See, e.g., *Alter & Sons, Inc.* v. *United Engineers & Constructors, Inc.* (S.D.Ill. 1973) 366 F.Supp. 959, 965; *J. W. Knapp Co.* v. *Sinas* (1969) 19 Mich.App. 427 [172 N.W.2d 867, 869]; see also *Oskey Gasoline and Oil Company, Inc.* v. *OKC Refining Inc., supra,* 364 F.Supp. 1137, 1144.) Concededly, one court has suggested in dictum that section 2204, subdivision (3), incorporates the requirement of assent to essential terms. (See *Blackhawk Heat. & P. Co., Inc.* v. *Data Lease Fin. Corp.* (Fla. 1974) 302 So.2d 404, 408.) We think, however, that the Delaware Supreme Court stated the prevailing view: "[T]he omission of even an important term does not prevent the finding under [section 2204, subdivision (3)] that the parties intended to make a contract." (*Pennsyl-*

*vania Co.* v. *Wilmington Trust Co.* (1960) 39 Del.Ch. 453, 463 [166 A.2d 726].)[8]

b. ■ *California Uniform Commercial Code section 2207, subdivision (1), should not be narrowly read to conform to the principle of mutual assent to all essential terms.*

As we have seen, section 2204 quite clearly does *not* incorporate the rule that parties must mutually assent to all essential terms. Mobil has thus failed to establish the premise that it would postulate as justifying a narrow reading of section 2207, subdivision (1). We shall, however, briefly consider Mobil's other and further arguments concerning the construction of section 2207, and show that these arguments, taken in isolation, are consistent neither with the language of section 2207, subdivision (1), nor with the logic of section 2207 as a whole.

Initially, Mobil focuses on section 2207, subdivision (1)'s requirement of a "definite . . . expression of acceptance." Mobil would define "definite" by reference to the extent of the difference between offer and acceptance: the more significant the divergence, the less definitely a

---

[8]In the instant case, Steiner and Mobil, at Mobil's instigation, arranged their dealings in a way that clearly distinguished preliminary bargaining from the process of offer and acceptance as such. As we have seen, Steiner and Chenen initially negotiated the terms of Steiner's offer. Chenen and Dalbec then submitted the offer to Pfaff, who accepted it on Mobil's behalf. Other Mobil employees treated Pfaff's decision as terminating negotiations: Chenen told Steiner to go ahead with the service station purchase; Montemarano delivered the contract documents to Steiner without comment or cover letter. Thus, because of the hierarchical structure which Mobil imposed on the bargaining, the trial court could conclude, as it did, that Mobil intended to accept Steiner's offer and not merely to continue negotiations.

In this case, thus, the serious nature of the contract provision in dispute does not preclude a finding that they intended to conclude a contract; the parties' negotiating procedure itself reveals their intent. In other cases, in which negotiations are not so well organized, the importance of a term which the parties leave open may very well be a decisive measure of whether the parties intended to enter into a contract. (See, e.g., *Luis Hirsch y CIA. Sociedad Anonima* v. *Rosenblatt Casing Co.* (2d Cir. 1969) 418 F.2d 1300, 1302.) Alternatively, as the Uniform Commercial Code comment to section 2-204, subdivision (3), suggests, the number of terms which the parties leave open may also be significant: "The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement. . . ." As this comment recognizes, however, the parties' "actions may be frequently conclusive on the matter despite the omissions." The ultimate inquiry must be whether the parties' conduct indicates a consummated process of offer and acceptance, and thus intent to contract (see, e.g., *Neal-Cooper Grain Co.* v. *Texas Gulf Sulphur Co.* (7th Cir. 1974) 508 F.2d 283, 288-289), or merely negotiations which have not yet, or have not ever, culminated in an agreement. (See, e.g., *Duval & Co.* v. *Malcom* (1975) 233 Ga. 784, 784-785, 786 [214 S.E.2d 356]; *Euclid Engineering Corp.* v. *Illinois Power Co.* (1967) 79 Ill.App.2d 145 [223 N.E.2d 409, 412-413].)

response is an acceptance. This construction suffers from two flaws. First, in section 2207, subdivision (1), "definite" modifies "expression" and not "acceptance," and thus refers to the *process* of offer and acceptance and not to the *terms* of the acceptance itself. Second, in any event, section 2207 as a whole bars any interpretation of "definite" which, as Mobil urges, would exclude from the ranks of acceptances all but collateral variations on the terms of offers. Section 2207, subdivision (2)(b)'s concern with material variations necessarily implies that acceptances incorporating such variations can satisfy the requirements of subdivision (1).

Mobil would also construe the final clause of section 2207, subdivision (1), which provides that, if acceptance "is expressly made conditional on assent to . . . additional or different terms," the "acceptance" does not operate as an acceptance but as a counteroffer. Specifically Mobil argues that we should read this provision broadly, by adopting the interpretation advanced in *Roto-Lith, Ltd.* v. *F. P. Bartlett & Co., supra,* 297 F.2d at page 500: "a response which states a condition materially altering the obligation solely to the disadvantage of the offeror is an 'acceptance . . . expressly . . . conditional on assent to the additional . . . terms.'"

Again, however, Mobil's construction does not accord with the language of the section. Such an interpretation of the conditional acceptance clause would transform acceptances into counteroffers without regard to whether the acceptance is in fact, as section 2207, subdivision (1), requires, "expressly made conditional on assent to . . . . additional or different terms." Moreover, under Mobil's reading, the conditional acceptance clause of section 2207, subdivision (1), would largely duplicate the function of the material variation clause of section 2207, subdivision (2)(b).

As Mobil concedes, courts and commentators alike have repeatedly criticized the *Roto-Lith* interpretation of section 2207, subdivision (1). (See, e.g., *Dorton* v. *Collins & Aikman Corp., supra,* 453 F.2d at p. 1168 & fn. 5; Duesenberg & King, *supra,* § 3.04 [1], pp. 3-40 to 3-49; 76 Harv.L.Rev. (1963) 1481.) Most courts have rejected *Roto-Lith,* and have instead interpreted the conditional acceptance clause literally, as we did earlier. (See *Ebasco Services Inc.* v. *Pennsylvania Power & L. Co., supra,* 402 F.Supp. at pp. 437-438.) Recognizing the superiority of the majority view, we reject Mobil's attempt to advance the *Roto-Lith* interpretation of section 2207, subdivision (1).

4. *Conclusion.*

In this case, as we have seen, the trial court correctly concluded that under section 2207 the guaranteed discount included in the terms of Steiner's offer, and not Mobil's standard revocable discount provision, became part of the agreement between Mobil and Steiner. Mobil cannot assert as a defense the failure of its own bureaucracy to respond to, or even fully recognize, Steiner's efforts to modify the standard Mobil dealer contract.

The judgment is affirmed.

Bird, C. J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Jefferson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.