**ST. PAUL STRUCTURAL STEEL COMPANY, a Minnesota corporation, Plaintiff and Appellee,**

v.

**ABI CONTRACTING, INC., a Minnesota corporation, Defendant and Appellant.**

Civ. No. 10746.

Supreme Court of North Dakota.

March 13, 1985.

Lundberg, Conmy, Nodland, Lucas, & Schulz, Bismarck, and Fredrickson & Byron, Minneapolis, Minn., for plaintiff and appellee; argued by Irvin B. Nodland, Bismarck, appearance by John Koneck, Minneapolis, Minn.

Zuger & Bucklin, Bismarck, and Moore, Costello & Hart, St. Paul, Minn., for defendant and appellant; argued by Murray G. Sagsveen, Bismarck, appearance by Timothy A. Sullivan, St. Paul, Minn.

ERICKSTAD, Chief Justice.

ABI Contracting, Inc. (ABI) has filed an appeal from a judgment of the District Court of Burleigh County awarding St. Paul Structural Steel Company (St. Paul) damages, together with costs and disbursements, in the amount of $415,057.12 for ABI's breach of a sales contract. We affirm in part, reverse in part, and remand for modification of the judgment.

The parties have stipulated that this case is governed by Minnesota law.

During 1978, ABI contracted with Basin Electric Power Cooperative to construct a coal-fired electric generating facility called the Antelope Valley station. ABI entered a subcontract agreement with St. Paul to purchase approximately $5,000,000 of structural steel materials. All of the steel was delivered by St. Paul and accepted by ABI. The dispute on this appeal involves the payment terms. ABI asserts that under the agreement it was permitted to retain 10% of the purchase price for delivered steel until the project was completed. St. Paul asserts that the parties reached no agreement on a retainage term.

The trial court, upon finding that the parties "failed to reach agreement on payment-retainage terms", concluded that under Section 336.2–310, Minn.Stat., St. Paul was entitled to receive full payment for materials three days after delivery to ABI. The trial court determined that St. Paul was entitled to recover, as incidental damages, interest payments for money St. Paul was required to borrow to continue its operations as a result of ABI's failure to make timely payments.

ABI has raised the following issues on appeal:

(1) Whether the trial court erred in construing the payment terms of the contract;

(2) Whether the trial court erred in awarding St. Paul interest as an element of incidental damages;

(3) Whether the trial court erred in awarding interest damages in excess of the 6% rate allowed under Section 334.01, Minn.Stat.;

(4) Whether the trial court erred in its determination that St. Paul did not waive its right to seek damages for ABI's breach; and

(5) Whether the trial court erred in admitting Exhibits 43 and 44a for use in determining the amount of damages to which St. Paul was entitled.

The primary issue raised on appeal is whether the trial court erred in construing the payment terms under the sales agreement between St. Paul and ABI. Having reviewed the transactions between the parties and the relevant Uniform Commercial Code (UCC) provisions, we conclude that the trial court's analysis in construing the agreement was fundamentally correct but that the court unnecessarily supplied terms involving progress payments different from those upon which the parties had agreed.

■ ABI's first purchase order for steel materials from St. Paul, dated October 31, 1978, included a provision authorizing ABI to withhold, as a retainage, 10% of the purchase price for the materials supplied by St. Paul until Basin Electric made its final acceptance of the project. The phrase "Retention Applies" was typed onto the right-hand column of the first page of the purchase order. The trial court found that during negotiations, which occurred prior to ABI's transmittal of the October purchase order, St. Paul had advised ABI that it would not agree to permit a retainage. The trial court further found that after St. Paul received the October purchase order its vice president of sales and engineering, Robert Clemens, objected to the retainage term in the purchase order through telephone conversations with ABI officials. The ABI officials agreed to "check on it and get back to Mr. Clemens" but ABI did not subsequently respond to St. Paul's objection. Clemens then sent a letter to ABI, dated December 5, 1978, proposing the following resolution to their disagreement about retainage:

"90% of our monthly invoice for materials delivered during that month would be due in 30 days. The remaining 10% could be retained for a period not to exceed 120 days."

Clemens signed and returned the October purchase order to ABI after making a hand-written change on the first page of the order stating, "retention applies per SPSS letter dated 12/5/78."

The trial court found that the parties never reached an agreement regarding retainage. All of the contracted steel was delivered by St. Paul and accepted by ABI, and 90% progress payments were made by ABI on the steel accepted by it. During this period of performance by St. Paul and ABI, which extended beyond two years, there were ongoing objections, discussions, and negotiations regarding the retainage issue. St. Paul continued to assert that retainage was not part of the agreement and ABI continued to assert that the agreement authorized them to retain 10% of the purchase price until completion of the project.

The trial court found that the October purchase order constituted an offer by ABI to enter into a sales contract with St. Paul.

The court further found that St. Paul's return of the signed purchase order, together with the notation which incorporated by reference the December 5, 1978, letter written by Clemens to ABI, constituted a definite expression of acceptance of the contract. The trial court concluded that the parties had entered into a valid sales agreement but that they had failed to agree on retainage terms. The court, applying Minnesota's codification of the relevant UCC provision, determined that St. Paul and ABI's retainage terms cancelled out.

ABI asserts that the trial court erred in determining that the different retainage terms in ABI's offer and St. Paul's acceptance had the effect of cancelling out those terms under the agreement. ABI asserts that the retainage term proposed in St. Paul's acceptance of ABI's offer did not become part of the contract because it was a material term which was not accepted by ABI, and therefore the 10% retainage term in ABI's purchase order became part of the agreement. We disagree.

The relevant UCC provision is codified as Section 336.2–207, Minn.Stat.:

> *"336.2–207 Additional Terms in Acceptance or Confirmation.*
>
> "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> "(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> (a) The offer expressly limits acceptance to the terms of the offer;
>
> (b) They materially alter it; or
>
> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> "(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter."

Unfortunately, the foregoing provision does not provide a clear result where the parties' forms contain conflicting terms. The authorities are split regarding the effect of conflicting terms in an offer and an acceptance. See White & Summers, Uniform Commercial Code, Chapter 1, Sec. 1–2, pp. 24–31 (2d Ed.1980); *see also Southern Idaho Pipe & Steel Company v. Cal-Cut Pipe & Supply, Inc.,* 98 Idaho 495, 567 P.2d 1246 (1977) (conflicting terms cancel out); *Steiner v. Mobil Oil Corporation,* 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751 (1977) (where UCC precludes term in acceptance from becoming part of the contract, the conflicting term included in the offer becomes part of the contract).

We believe the better reasoned application of the UCC to this issue, and one which the Minnesota courts would follow, is that conflicting terms cancel out, and the contract consists of the terms upon which both parties have expressly agreed together with terms supplied from relevant provisions of the UCC. This result is supported by comment 6 to Section 2–207 of the UCC [Section 336.2–207, Minn.Stat.]:

> "6. ... Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree,

and terms supplied by this Act, including subsection (2)."

This resolution of the issue is also supported by Professor James J. White[1] in White & Summers, Uniform Commercial Code, Chapter 1, Sec. 1–2, pp. 30–31 (2d Ed.1980):

> "... [this] outcome favors neither party.... [It] would not give either party a term when their documents conflict as to that term. The Code may then provide a term substantially identical to one of those rejected. So be it. At least a term so supplied has the merit of being a term that the draftsmen considered fair."

Under this construction of the UCC, ABI and St. Paul, having provided conflicting terms with regard to retainage, failed to reach an agreement on retainage. To this extent the trial court's application of the law was correct. However, in supplying entirely new payment terms under Section 336.2–310, Minn.Stat., the trial court failed to recognize and give effect to the terms regarding payment upon which St. Paul and ABI had reached agreement.

Although St. Paul objected to ABI's withholding of a 10% retainage from the purchase price, it did not object to the timeliness of the 90% progress payments made by ABI. By their written documents and their performance throughout the contract, ABI and St. Paul agreed that progress payments for delivered materials were to be made within 30 days of the invoice date. Except for the 10% retainage about which they disagreed, payments were made substantially in accord with the 30-day provision. The only term upon which the parties failed to agree was that of retainage, and therefore, it is necessary to turn to the UCC only to supply the retainage term.

Section 336.2–310, Minn.Stat., provides that "unless otherwise agreed payment is due at the time and place at which the buyer is to receive the goods." Thus, Minnesota's codification of the UCC does not provide for retainage or withholding of

part of the purchase price absent an express agreement to the contrary by the parties. Consequently, in construing the contract together with the foregoing UCC provision, ABI was obligated to pay St. Paul 100% of the purchase price at the agreed time for payment which, by express agreement between ABI and St. Paul, was to be within 30 days after receipt of each invoice. ABI breached its agreement only to the extent that it did not pay the full price on delivered goods within 30 days after receipt of the invoice for them.

■ When a buyer fails to pay the price as it becomes due, the seller may recover the price together with any "incidental damages." Section 336.2–709, Minn.Stat. ABI asserts that any interest St. Paul paid to borrow operating funds as a result of ABI's breach constituted consequential damages rather than incidental damages and that St. Paul was not, therefore, entitled to recover the interest charges as an element of incidental damages.

The parties have not cited nor have we been able to locate any Minnesota decisions discussing recovery of interest payments as incidental damages under Section 336.2–709, Minn.Stat. However, our court has determined that interest payments incurred as a result of a buyer's breach of a sales agreement do constitute incidental damages recoverable under the comparable UCC provision in North Dakota. *Hofmann v. Stoller*, 320 N.W.2d 786 (N.D. 1982); *Berg v. Hogan*, 322 N.W.2d 448 (N.D.1982); *see also Intermeat, Inc. v. American Poultry Inc.*, 575 F.2d 1017 (2d Cir.1978). We believe that the Minnesota courts, if presented with this question, would hold in accord with the foregoing decisions. Consequently, we conclude that the trial court did not err in awarding interest as an element of incidental damages under Section 336.2–709, Minn.Stat.

■ ABI also asserts that the trial court erred in awarding interest damages to St. Paul in excess of the 6% rate allowed under

1. Professor Robert S. Summers disagrees with this approach. See White & Summers, Uniform Commercial Code, Chapter 1, Sec. 1–2, pp. 29–31 (2d Ed.1980).

Section 334.01, Minn.Stat., which provides in relevant part:

"The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing; ..."

That provision limits to 6% the amount which may be awarded as prejudgment interest. *Pearson-Berke, Inc. v. McIntosh,* 350 N.W.2d 378 (Minn.1984). In this case, however, St. Paul was not awarded prejudgment interest but was allowed to recover, as an element of incidental damages, interest payments incurred by it to borrow operating funds necessitated by ABI's breach. Consequently, the 6% statutory limitation provided under Section 334.01, Minn.Stat., was not applicable, and the trial court did not err in awarding interest damages to St. Paul in excess of that rate. *See United Telecommunications, Inc. v. American Television & Communications Corporation,* 536 F.2d 1310 (10th Cir.1976); *Hall GMC, Inc. v. Crane Carrier Company,* 332 N.W.2d 54 (N.D.1983); *Hirschkorn v. Severson,* 319 N.W.2d 475 (N.D.1982).

■ ABI asserts that St. Paul waived its right to seek damages. The trial court found that St. Paul's actions did not constitute a waiver of its rights in this case. Having reviewed the record, we conclude that there is substantial evidence to support the court's finding that, from the initial negotiations through final performance of the contract, St. Paul continued to assert that the retainage provision was not part of its contractual agreement with ABI. We conclude that the trial court did not err in its determination on this issue.

ABI asserts that the trial court improperly admitted Exhibits 43 and 44a. Those exhibits were provided by St. Paul at the trial court's request for determining damages based upon the trial court's interpretation of the agreement as requiring payment for delivered goods three days after their shipment. Based upon our interpretation of the contract, the 90% progress payments made by ABI within 30 days of the invoice date were in compliance with the contract and did not constitute a breach of the contract. On remand, the trial court must recompute damages based upon that interpretation, and it will therefore be unnecessary for the court to use Exhibits 43 and 44a for that purpose.

In accordance with this opinion, the judgment of the district court is affirmed in part, reversed in part, and the case is remanded with instructions that the court enter a modified damage award to St. Paul which is consistent with this opinion.

GIERKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.