728 P.2d 469

**DATA GENERAL CORPORATION, Plaintiff-Appellant,**

v.

**COMMUNICATIONS DIVERSIFIED, INC., Defendant-Appellee.**

**No. 16015.**

Supreme Court of New Mexico.

Nov. 21, 1986.

Louis J. Vener, Albuquerque, for plaintiff-appellant.

Richard L. Alvidrez, Keleher & McLeod. P.A., Albuquerque, for defendant-appellee.

## OPINION

RIORDAN, Chief Justice.

Data General Corporation (Data General) brought this action for "bill backs" owed on a discount agreement with Communications Diversified, Inc. (Communications). Communications was awarded summary judgment by the trial court on the ground that the agreement was a contract for the sale of goods controlled by NMSA 1978, Section 55–2–725, and the statute of limitation had run before the complaint was filed. Data General appeals and we reverse.

On March 21, 1978, Data General and Communications entered into an agreement providing for scheduled discounts dependent upon future purchase by CDI. The specified term of the discount contract was fifteen months, which expired June 21, 1979. The contract specified that Communications was to purchase a minimum of eleven computers within the fifteen months to receive the calculated discount it received. The contract states:

> [i]f Buyer fails to * * * purchase and take delivery during the Delivery Period [eighteen months] of the minimum number of system units associated with the level specified [eleven to fifteen] * * *, [Data General] will recalculate the discounts previously granted in accordance with * * * the number of system units actually delivered * * *.

At the expiration of the ordering period, Communications had purchased one computer. Data General recalculated the discount and on December 18, 1979, it invoiced Communications for the unearned discount. Communications did not pay the invoice and on September 22, 1983, Data General filed suit to recover.

Two issues raised on appeal are whether the trial court erred in:

A. The calculation of when the "breach" occurred; and

B. the application of Section 55–2–725 instead of NMSA 1978, Section 37–1–3 for

the period of limitation in which an action may be brought.

**Date of Breach**

■ It is undisputed that the contract is for a term that is to last fifteen months beginning March 21, 1978, and extending until June 21, 1979. Since the contract is for a specified term, the parties would know when the contract expires and whether there is a breach. And accordingly, "[w]hen an agreement is absolute and unconditional the general rule is that no demand for performance is necessary." *In re Independent Distillers of Kentucky*, 34 F.Supp. 708 (W.D.Ky.1940). *See also* NMSA 1978, § 56–5–3 (Repl.Pamp.1986).

■ Data General argues that the amount due on bill-backs is unknown until it invoices the buyer as required by the contract. Thus, it alleges that notice was given of the amount due on December 18, 1979, and the breach occurred then.

However, at the end of the ordering period, which was June 21, 1979, both parties knew that CDI had not ordered eleven computers and that it had breached the discount agreement. CDI signed the contract with full knowledge of the minimum order requirement for the discount percentage it was given. However, CDI stated it did not know it would be held to this breach because it was told it did not have to order any minimum number of computers and that the minimum number clause was never enforced.

The unambiguous contract governs. *See Albuquerque National Bank v. Albuquerque Ranch Estates*, 99 N.M. 95, 645 P.2d 548 (1982). The breach occurred the day after the contract expired, June 22, 1979. Since the suit was brought September 22, 1985, the suit was brought more than four and less than six years after the breach.

**Limitation Statute**

The trial court applied Section 55–2–725, which is part of the New Mexico Uniform Commercial Code, which states: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Since the breach occurred on June 22, 1979, under this section the action would be barred by the statute of limitations, presuming a contract for sale is involved.

■ We must determine whether this is a contract for the sale of goods which the limitation period in the Uniform Commercial Code would govern. NMSA 1978, Section 55–2–106(1) states in pertinent part that a " '[c]ontract for sale' includes both a present sale of goods and a contract to sell goods at a future time. A 'sale' consists in the passing of title from the seller to the buyer for a price." Looking carefully at the discount agreement, it states that the "terms and conditions of sale (Form 100) prevailing at the time a purchase order is accepted by [Data General] will apply to all purchases...." This requires that another form, contract or invoice be used at the time of actual purchase. Further, there is no specific computer equipment to be purchased under this agreement. The agreement requires that a certain number must be purchased by a certain time, including five percent of the minimum contract amount at the time of contracting, in order for the discount to apply. No title is passed for a price by this agreement, and there is no requirement to purchase even one computer. Therefore, it is not a contract for sale.

CDI argues that a warranty is given in the agreement for the equipment and thus the contract is for the sale of computers. Since this warranty applies to all the equipment sold by Data General and not just specific pieces bought by CDI, it would not bring it within the contract for sale, as defined previously by Section 55–2–106(1).

Sale, as defined by the U.C.C., is the passing of title for a price. Section 55–2–106(1). Since there was no specific exchange of equipment with this agreement, no title passed. 1 A. Squillante & J. Fonseu; *Williston on Sales*, § 5–7 at 106 (1973).

The court in *Dynamics Corp. of America v. International Harvester Company*, 429 F.Supp. 341 (S.D.N.Y.1977), stated that

in determining whether a contract is for the sale of goods and thus covered by the U.C.C., it is necessary to look to the main objective or intent of the parties' agreement. The dominant objective in the present case was to provide a discount schedule, *if* sales were made.

We conclude that Section 55–2–725 would not govern this agreement. NMSA 1978, Section 37–1–3(A), with the limitation of six years would control this written contract. Thus, summary judgment on the grounds that the statute had run would be improper and the holding by the trial court is reversed. This case is remanded to the trial court for trial.

IT IS SO ORDERED.

SOSA, Senior Justice, and FEDERICI and WALTERS, JJ., concur.

STOWERS, J., dissents.

STOWERS, Justice, dissenting.

I agree with the majority's conclusion that the breach of contract in this case occurred on June 22, 1979, and concur in that portion of its opinion. I cannot agree with the majority's conclusion that the contract in issue was not a contract for sale and therefore dissent from the portion of its opinion discussing the applicable statute of limitations.

The trial court concluded that plaintiff Data General Corporation (Data General) and defendant Communications Diversified, Inc. (CDI) had entered into a contract for the sale of goods, computers, that was governed by the Uniform Commercial Code's four-year statute of limitations. *See* NMSA 1978, § 55–2–725. The majority of this Court reject the trial court's findings and reverse its order of summary judgment. In mischaracterizing this agreement as a contract to provide a discount schedule rather than a contract for the sale of goods, I believe the majority disregard the clear intent of the parties and misconstrue the letter and spirit of the Uniform Commercial Code.

A "contract" is the "total legal obligation which results from the parties' agreement," NMSA 1978, § 55–1–201(11) (Cum. Supp.1986), and an "agreement" is the "bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance," NMSA 1978, § 55–1–201(3) (Cum. Supp.1986). In addition to the "System Unit OEM Discount Agreement" (Discount Agreement) form upon which the majority focus, the March 21, 1978 agreement between Data General and CDI encompassed an amendment to that form, a purchase order from CDI to Data General for certain computer equipment and software, and a price quotation from Data General to CDI. *See Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 141 Cal.Rptr. 157, 596 P.2d 751 (1977) (en banc) ("competitive allowance" or discount agreement found within package of form documents).

Goods are "all things ... which are movable at the time of identification to the contract for sale...." NMSA 1978, § 55–2–105(1). Computers unquestionably constitute "goods." As the majority opinion notes, the sale of goods consists in the passing of the title to the goods for a price. NMSA 1978, § 55–2–106(1).

Under the Uniform Commercial Code, however, a "contract for sale" may be a "present sale of goods" or a "contract to sell goods at a future time." *Id.* In a "present sale of goods," title passes from the seller to the buyer for a price by the making of the contract; in a "contract to sell goods at a future time," a contract is made obligating the parties to pass title for a price at a future time. *Id.* It is unnecessary to determine whether the agreement between Data General and CDI constituted a present sale of goods or a contract to sell goods at a future time, for the record amply supports the trial court's finding that there was a "contract for sale" within the meaning of the Uniform Commercial Code.

First, the trial court's finding is supported by admissions made in the pleadings. Data General's amended complaint alleged, and CDI's answer admitted, that

plaintiff and defendant had entered a written contract in which plaintiff "agreed to sell merchandise to [d]efendant at a discount specified in that contract." Indeed, Data General first raised the argument that this was not a contract for the sale of goods on appeal following the adverse judgment below.

Furthermore, the trial court's finding is supported by the language of the parties' written contract. The Discount Agreement provided that

Data General (DGC) and the Original Equipment Manufacturer Communications Diversified, INc. [sic] (Buyer) agree that the following terms and conditions shall govern the sale, discounting and licensing of DGC Equipment and Software.

. . . .

... Buyer must purchase upon the date of this Agreement and take delivery during the first 3 months of this Agreement at least 5% of the minimum number of System Units associated with the level specified....

It stated that "Buyer" would receive scheduled discounts provided that Buyer ordered within the ordering period a scheduled number of units; if Buyer failed to purchase and take delivery of the requisite number of units, Data General would recalculate the discount previously granted and invoice Buyer for the difference. The Discount Agreement at least twice referred to "equipment and software furnished under this ... Agreement" and included a warranty on Data General equipment.

These segments of the record alone clearly demonstrate that the parties incurred legal obligations as a result of their bargain to pass title to goods for a price at a future time. The trial court's finding that the parties entered into a "contract for sale" under the Uniform Commercial Code therefore should be affirmed. Because an action for breach of any "contract for sale" must be commenced within four years after the cause of action accrued, NMSA 1978, § 55–2–725, the trial court's order of sum-

mary judgment in favor of defendant CDI was proper and should be affirmed.

The Official Comment to Section 55–2–725 states that the purpose of the section is to introduce a uniform statute of limitations for sales contracts, one that is most appropriate to modern business practice. The majority opinion too narrowly interprets the meaning of "contract for sale" under the Uniform Commercial Code by concentrating on portions of the language of the Discount Agreement that merely reflect the parties' agreement regarding the price term of their contract for the future (and perhaps present) sale of computer equipment. *See* NMSA 1978, §§ 55–2–201, –202, –204. The majority's severing of the discount schedule from the contract for sale severely undercuts the purpose of promoting uniform application of modern business practices that underlies Section 55–2–725 and the Uniform Commercial Code generally.

For the foregoing reasons, I dissent from the portion of the majority's opinion discussing the statute of limitations.