PHILLIPS PETROLEUM COMPANY, NORWAY, American Petrofina Exploration Company of Norway, Norsk Agip A/S, Norsk Hydro A/S, Elk Norge A/S, Total Marine Norsk A/S, Aquitaine Norge A.D., Eurafrep Norge A/S, Coparex Norge A/S, Cofranord A/S, American International Reinsurance Company and Walter Insurance Limited, Plaintiffs-Respondents and Cross-Appellants,

v.

BUCYRUS-ERIE COMPANY, Bucyrus Disc, Inc. and Richard L. Johnson Company, Inc., Defendants-Appellants and Cross-Appellants,

DEZEEUW TRADING COMPANY, LTD., a/k/a Trading Company, DeZeeuw, Ltd., Defendant.†

Court of Appeals

*No. 84–152. Submitted on briefs May 7, 1985.—
Decided July 15, 1985.*
(Also reported in 373 N.W.2d 65.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendants-appellants and cross-respondents the cause was submitted on the briefs of *Quarles & Brady*, with *Laurence C. Hammond, Jr.*, and *Mary Pat Ninneman* of counsel, of Milwaukee.

For the plaintiffs-respondents and cross-appellants the cause was submitted on the briefs of *Borgelt, Powell, Peterson & Frauen, S.C.*, with *Kurt H. Frauen* and *David*

*B. Bartel* of counsel, of Milwaukee, and *Phillips Petro-leum Company*, with *William G. Paul, C.J. Roberts,* and *C.H. Purdy* of counsel, of Bartlesville, Oklahoma.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J. Bucyrus-Erie Company (Bucyrus) appeals from a judgment awarding $1,680,646 in compensatory damages to Phillips Petroleum Company (Phillips), for breach of contract and negligence. Phillips cross-appeals arguing that the damages are inadequate. Bucyrus sold a number of marine cranes to Phillips for use on Phillips' oil drilling platforms in the Norwegian sector of the North Sea. On February 28, 1974, Phillips was using a crane to unload supplies from a ship in choppy waters. The crane broke off at the base and fell into the sea, but was later retrieved. Phillips alleged that on this crane and other cranes, Bucyrus had provided pedestal adapters made of inadequate steel. A pedestal adapter is that part of a crane's base which connects it to the pedestal of the oil drilling platform. Phillips sought to recover the expense of replacing the pedestal adapters on all the cranes sold to it by Bucyrus plus incidental damages for such things as labor and helicopter maintenance. The jury found that Bucyrus breached the contract by failing to make the adapters of a specific grade of steel; that Bucyrus breached the contract's express warranty of merchantability; and that Bucyrus was negligent in the design, manufacture and fabrication of the pedestal adapters. The jury also found that Bucyrus did not breach the implied warranties of merchantability or of fitness for a particular purpose and that the pedestal adapters were not unreasonably dangerous.[1]

On appeal, Bucyrus argues that the trial court erred in holding that certain provisions of Bucyrus' offer, which disclaimed warranties, limited its liability and allowed

---

[1] This jury finding is apparently inconsistent with the jury finding of breach of express warranty.

for the substitution of materials, were not a part of the contract and were unenforceable. Bucyrus also argues that the trial court erred in denying its motion to prohibit Phillips' damages expert from testifying. We hold that the trial court erred in interpreting the contract between Bucyrus and Phillips; that the disclaimer clause in Bucyrus' offer was part of the contract; that the remedy therein did not fail of its essential purpose; that the disclaimer clause is enforceable; and that, therefore, Phillips' damages are limited to the replacement value of the crane and the pedestal adapters as specified in the disclaimer.

We reverse the judgment and remand for a new trial on all issues and further require that if the fact finder is required to find the amount of damages, such finding must be limited to the cost of replacement, as required by the contract. We do this because the trial court, when the terms of a contract are at issue, must determine those terms before presenting any factual issues to the fact finder. We also reject Phillips' argument on cross-appeal that the $1,680,646 compensatory damage award was inadequate.

Phillips began negotiating with Bucyrus in the early 1970's to purchase the marine cranes. Bucyrus submitted proposals to Phillips dated March 18 and April 7, 1971. The proposals contained detailed descriptions of the crane equipment, price terms, delivery schedules and other terms. Also included were certain "conditions of proposal" that limited Bucyrus' warranties, liability and damages.[2] The conditions provided in part as follows:

[2] Bucyrus' proposal contained the following language concerning warranties and the limitation of its liability:

WARRANTY

3A. Manufacturer warrants the machinery, and all spares, replacements, tools and auxiliary equipment, now or hereafter furnished by it therefor, to be built in a workmanlike manner of sound high-grade material, and, under normal use and proper

Manufacturer warrants the machinery, and all spares, replacements, tools, and auxiliary equipment, now or hereafter furnished by it therefor, to be built in a workmanlike manner of sound high-grade material, and, under normal use and proper attention, to operate properly. . . . Manufacturer is to have the option of replacing F.O.B. works any element proved to be defective or of remedying any proved defect, but Manufacturer's liability in any event shall not exceed the replace-

---

attention, to operate properly. Any claim made under this warranty must be presented in writing to Manufacturer at South Milwaukee, Wisconsin, within six months after shipment or, in the case of Transit Crane carrier units whether or not sold separately, or any parts thereof, within six months after shipment or 4,000 miles travel, whichever first occurs. Manufacturer is to have the option of replacing F.O.B. works any element proved to be defective or of remedying any proved defect, but Manufacturer's liability in any event shall not exceed the replacement value of the defective element F.O.B. works, and in the case of units or parts purchased by Manufacturer, Manufacturer's liability shall not exceed the settlement which Manufacturer is able to obtain from its supplier. Manufacturer is to have a reasonable length of time, after recognition if claim, in which to exercise its above option, and shall have the right to require the return of the alleged defective element, transportation charges prepaid, before recognizing any claim. No allowance will be made for repairs or alterations undertaken without Manufacturer's written consent. If parts other than of the original manufacturer are used in replacement without Manufacturer's written consent, or if the purchaser falls in arrears in making any payment, or if, without Manufacturer's written consent, the machinery is repaired or altered in such a way as in Manufacturer's judgment to reduce its stability or reliability, or if the machinery is subjected to misuse, negligence or accident, all warranties are thereby waived. The fore-going [sic] warranty is in lieu of all tort liability and all other warranties or representations or rights of rejection, express or implied. by law or by contract. More specifically, but without restriction thereto, there is no representation or express or implied warranty that the machinery complies with the highway or other laws of any state. No agent, distributor or other person is authorized to give any other warranty, nor to assume any other liability.

ment value of the defective element F.O.B. works. . . . The fore-going [sic] warranty is in lieu of all tort liability and all other warranties or representations or rights of rejection, express or implied, by law or by contract.

In addition, Bucyrus' proposals specified that: "The right is reserved to make changes in specifications or design which, in the opinion of Manufacturer, are an improvement or are necessary because of the unavailability of materials." Phillips sent several purchase orders to Bucyrus, some of which were stamped with the following notation: "This order expressly limits acceptance to the terms stated herein. Purchaser objects to any additional or different terms of the seller." Upon receiving the purchase orders, Bucyrus began manufacturing the cranes.

The final proposal said that Bucyrus would submit specifications and drawings of the pedestal adapter or "turret" to Phillips. There was some discussion between the parties on the type of steel to be used in making the adapters. Phillips ultimately asked that Bucyrus use one of three types of a tougher steel than suggested by Bucyrus to fabricate the pedestal adapters. Bucyrus chose one of the steel types, ASTM–A516 Grade 70 steel, to be used for the adapters on Phillips' cranes. Since A516 steel could not be obtained in time for Bucyrus to meet Phillips' delivery schedules, Bucyrus substituted A572 Grade 50 steel in fabricating the pedestal adapters. Bucyrus' engineers approved the substitution.

Determining the terms of a contract is a matter of law. In matters of law, this court need not defer to the trial court's judgment.[3]

Both Bucyrus and Phillips agree that sec. 402.207, Stats., dealing with the inclusion of additional or differ-

[3] *In re Estate of Omernik,* 112 Wis. 2d 285, 290, 332 N.W.2d 307, 309 (1983); *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

ent terms to a contract, controls their transaction. Section 402.207 reads as follows:

Additional terms in acceptance or confirmation. (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of chs. 401 to 409.

Section 402.207 alters the common-law mirror-image rule whereby the terms of an acceptance must mirror those of the offer. Subsection (1) expressly provides that a contract exists even if the acceptance contains additional or different terms. A court must then look to sub. (2) to see which of the variant terms become part of the contract.[4]

The trial court ruled that Bucyrus' proposals were offers; that Phillips' purchase orders were acceptances; and that the stamped portion of some of the purchase

---

[4] *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis. 2d 193, 211, 206 N.W.2d 414, 423 (1973).

orders was not a counteroffer. The trial court reasoned that the stamped portion was not a counteroffer because it did not clearly state that Phillips was unwilling to proceed with the deal unless there was an express agreement to different warranty terms. However, the trial court assumed that the stamped clause implicitly incorporated different terms consisting of all Uniform Commercial Code warranties and unlimited liability. For that reason, the trial court held that neither party's conflicting warranty and liability terms controlled, and that under the gap-filler provisions of secs. 402.313, 402.314 and 402.315, Stats., all Code warranties applied and all remedies were available to Phillips under secs. 402.714 and 402.715, Stats.

We begin with a determination of whether Phillips' purchase order set forth additional or different terms. The language of the stamped portion stated that "[t]his order expressly limits acceptance to the terms stated herein." The purchase order nowhere mentions warranty or liability terms. The purchase order at best is silent as to warranty and liability. The trial court erred in reading these terms into the purchase order. A court cannot deduce from a party's silence that certain terms are implied. Silence is not an effective rejection or counteroffer.[5] Where a crucial term is found in the offer and the acceptance is silent on that term, the terms of the offer control.[6] The purchase order merely attempted to limit the contract solely to the terms of the purchase order. Such an attempt would be effective in an offer[7] but has no effect in an acceptance.

---

[5] *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 540 P.2d 978, 983 (Hawaii 1975).

[6] J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 31 (2d ed. 1980); *see Earl M. Jorgensen Co., supra* note 5, at 983.

[7] *See* sec. 402.207(2)(a), Stats.

The trial court's determination that the purchase order did not make Phillips' acceptance expressly conditional on Bucyrus' assent to additional or different terms is correct. The phrase "expressly made conditional on assent" in U.C.C. sec. 2–207(2) has been construed narrowly.[8] The acceptance must clearly reveal that the offeree is unwilling to proceed with the transaction unless the offeror assents to the proposed additional or different terms in the acceptance.[9] A buyer's acceptance containing different shipping terms but which was silent as to limited liability was held *not* to be expressly conditional upon the seller's assent where it stated that "acceptance of this purchase order shall be deemed to constitute an agreement upon the part of the seller to all conditions named hereon and supersedes all previous agreements."[10] Similarly, even if implied warranty and liability terms are read into the purchase order, the purchase order "expressly limit[ing] acceptance to the terms stated" therein does not make Phillips' acceptance expressly conditional on Bucyrus' assent thereto.

Because we have determined that the purchase order contains no additional or different terms, we need not turn to sec. 402.207(2), Stats., for help in deciding what effect additional or different terms have on the contract. However, even if the purchase order is read to implicitly contain different terms, sec. 402.207(2)(b) would operate to exclude them. That section provides that additional terms do not become part of the contract if they materially alter it.[11] An attempt on the

[8] *Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924, 926 (9th Cir. 1979).

[9] *Id. See Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972).

[10] *Idaho Power, supra* note 8, at 925.

[11] Official U.C.C. Comment 3 to sec. 402.207, Stats., suggests that sec. 402.207(2) applies to different as well as additional terms. *See Air Products, supra* note 4, at 211, 206 N.W.2d at 423.

buyer's part to impose consequential liability on the seller when the seller has initially disclaimed such liability is a material alteration.[12] Disclaimer of an implied warranty of merchantability is also material.[13] Different terms materially altering what would otherwise be firmed by the acceptance of an offer will not be included in the contract unless the other party expressly agrees thereto.[14] Thus, even if the purchase order implicitly contained differing warranty and liability terms, those terms would not become part of the contract because they constitute a material alteration.

Bucyrus' proposal provided a limited warranty in lieu of all tort liability, including liability for negligence. The remedies contained in Bucyrus' proposal were an integral part of its offer and were accepted by Phillips. Parties may properly agree to limit a buyer's remedies to repair and replacement.[15] Limitation of remedies to repair or replacement is not unconscionable, even in a noncommercial setting.[16] In addition, under Wisconsin law, exculpatory clauses such as that found in Bucyrus' proposal are generally valid.[17] The disclaimer was valid and should have been enforced by the trial court.

The trial court's alternative grounds for failing to enforce Bucyrus' disclaimer do not withstand scrutiny. The court stated that it would not enforce the disclaimer because it was not conspicuous, because the limited reme-

[12] See Mead Corp. v. McNally-Pittsburg Mfg. Corp., 654 F.2d 1197, 1204–05 n. 11 (6th Cir. 1981) (citing Air Products, supra note 4).

[13] Air Products, supra note 4, at 214, 206 N.W.2d at 425; Official U.C.C. Comment 4 to sec. 402.207, Stats.

[14] Air Products, supra note 4, at 213, 206 N.W.2d at 424.

[15] Secs. 402.316(4) and 402.719(1)(a), Stats.

[16] See Murray v. Holiday Rambler, Inc., 83 Wis. 2d 406, 418–20, 265 N.W.2d 513, 519–20 (1978).

[17] Arnold v. Shawano County Agricultural Soc'y, 111 Wis. 2d 203, 209, 330 N.W.2d 773, 777 (1983).

dy set forth in the disclaimer would fail of its essential purpose, and because the disclaimer of tort liability was ambiguous and unclear.

The trial court erred in refusing to enforce Bucyrus' disclaimer of warranty because it was inconspicuous. Section 402.316(2), Stats., requires that disclaimers of implied warranty be conspicuous. We note that on page 1A of its proposal Bucyrus disclaimed "all other warranties or representations or rights of rejection, express or implied." Here, Bucyrus' disclaimer of implied warranties was conspicuous. Section 401.201(10), Stats., defines "conspicuous" as being "so written that a reasonable person against whom it is to operate ought to have noticed it." A sophisticated commercial merchant such as Phillips ought to have noticed the warranty disclaimer for several reasons. The disclaimer was part of material printed on page 1A, the back side of the first page. None of the other proposal pages had information on its back. The warranty disclaimer occurred among such crucial contract terms as price, delivery and erection of the pedestal adapters. It is inconceivable that Phillips would fail to discover the warranty disclaimer after checking, for example, the terms of delivery, which appeared exclusively on page 1A. In case Phillips missed seeing the disclaimer, a paragraph on the proposal's signature page directed its attention to page 1A. Phillips ought to have seen that notice since it appeared close to a term Phillips specifically incorporated in its purchase order, the term providing for the services of an erection engineer. A reasonable commercial merchant ought to have noticed the warranty disclaimer, especially since such disclaimers are common in commercial transactions.[18]

---

[18] *See Lincoln Pulp & Paper Co. v. Dravo Corp.*, 445 F. Supp. 507, 515, 516 n. 8 (D. Me. 1977).

The purpose of an exclusive remedy of repair or replacement, from the buyer's standpoint, is to give the buyer goods which conform to the contract within a reasonable time after a defect is discovered.[19]  Thus, the limited remedy of repair or replacement of defective parts fails of its essential purpose whenever, despite reasonable opportunity for repair, the goods are not restored to a nondefective condition within a reasonable time, whether or not the failure to do so is willful.[20] Under this standard, the contract remedy set forth in the disclaimer clause did not fail of its essential purpose.  Within a reasonable time after the crane accident (eighteen to twenty-four months) Bucyrus replaced all twelve of the North Sea crane pedestals, bringing them up to contract specifications.  The trial court erred in ruling that the limited remedy here failed of its essential purpose, especially since such determination is for the jury, not the court.[21]

Lastly, the trial court's failure to enforce the disclaimer of tort liability because it was ambiguous is not supported by the evidence.  The tort liability disclaimer read as follows: "Manufacturer's liability in any event shall not exceed the replacement value of the defective element F.O.B. works . . . .  The fore-going [sic] warranty is in lieu of *all tort liability* and all other warranties or representations or rights of rejection, express or implied, by law or by contract."  (Emphasis added). This language clearly exculpates Bucyrus from tort liability.  To be clear and unambiguous, the contractual language of disclaimer must mention "tort," "negli-

---

[19] *Murray, supra* note 16, at 420, 265 N.W.2d at 520.

[20] *Id.* at 424, 265 N.W.2d at 522.

[21] *See id.* at 425, 265 N.W.2d at 523.

gence," or the like.[22] Bucyrus' disclaimer expressly mentions tort liability, and is thus clear and unambiguous and should have been enforced by the trial court.

In summary, we hold that the trial court erred in determining the terms of the contract and, specifically, by refusing to give effect to Bucyrus' disclaimer of warranty and tort liability, which we now hold was properly part of the contract. We therefore reverse and remand this matter for trial on all issues but we limit damages, if any are found, to the cost of replacement pursuant to the disclaimer term of the contract between the parties.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[22] *Jig the Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 176 (5th Cir. 1975), *cert. denied sub nom. Atlantic Marine, Inc. v. Jig III Corp.*, 424 U.S. 954 (1976).