WESTINGHOUSE ELECTRIC CORPORATION, a Pennsylvania corporation, d/b/a Westinghouse Electric Supply Company, Plaintiff,

v.

NIELSONS, INC., a Colorado corporation; Federal Insurance Company, a New Jersey corporation; and City of Durango, a municipality located in the State of Colorado, Defendants.

Civ. A. No. 85–K–2493.

United States District Court, D. Colorado.

Nov. 14, 1986.

Jim M. Hansen, Bradley, Campbell & Carney, Golden, Colo., for plaintiff.

Michael J. Cook, Jo Frances Walsh, Conover, McClearn & Heppenstall, P.C., Denver, Colo., for defendants.

David P. Smith, Smith & West, Durango, Colo., for City of Durango.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### Findings of Fact

Jurisdiction in this breach of contract action lies under 28 U.S.C. § 1332. The case is before me on cross-motions for summary judgment. The Uniform Commercial Code, as adopted in Colorado, provides the controlling law.

Nielsons is the city of Durango's general contractor on a wastewater treatment plant construction project. According to the allegations of the complaint, Westinghouse, or Wesco, contracted with Nielsons to supply certain electrical materials for plant construction. Wesco brought suit against Nielsons and the other named defendants, alleging a principal balance of over $71,000 "due, owing and unpaid" for labor and materials. Complaint, ¶ 11. Nielsons promptly counterclaimed for material breach of the contract occasioned by Wesco's failure to deliver equipment and shop drawings in timely fashion. The counterclaim seeks $422,300 in damages.

Wesco purports to have expressly disclaimed liability for the damages Nielsons seeks in its counterclaim. Nielsons moves for summary judgment on the issue, and hopes to strike the disclaimer defense. Wesco has also filed a cross-motion for summary judgment on the disclaimer issue.

### Standards of Decision

In ruling on a motion for summary judgment, I must be continually mindful of the appropriate standards of decision. Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (11th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

On the basis of these standards, I find the disclaimer issue to be amenable to summary judgment. Disposition of the issue turns solely on the legally operative effect of uncontested written documents. *See Mead Corp. v. McNally-Pittsburg Manufacturing Corp.*, 654 F.2d 1197, 1200, 1206 (6th Cir.1981).

### Battle of the Forms

Following preliminary contact between Wesco and Nielsons, Wesco sent the general contractor a "quick service quotation" on

the items Wesco would supply for the plant. The quotation, dated July 7, 1983, was for $109,000. Attached to the quotation was a standardized "terms and conditions" form. Three paragraphs from that form, numbered 1, 5, and 8, are of import here. Paragraph one runs as follows:

All sales are expressly conditional on Buyer's agreement to the standard terms and conditions on the front and back of this form. No additional or different terms apply unless expressly agreed to in writing by Westinghouse Electric Supply Company (Seller). Seller hereby gives notice of its objection to any different or additional terms. Acceptance of or payment for any of the goods constitute Buyer's agreement to Seller's terms and conditions.

In applicable part, paragraph 5 states "[t]his quotation constitutes an offer to sell." Finally, paragraph 8 declares:

Seller shall not be liable for special, indirect, incidental, or consequential damages. The remedies of Buyer set forth herein are exclusive, and the liability of Seller with respect to any contract or sale of anything done in connection therewith whether in contract, tort (including Seller's negligence), under any warranty or otherwise shall not exceed the price of the product or part on which such liability is based.

Shortly after receipt of Wesco's quotation, Nielsons issued a purchase order. Appended to the order was a list of standardized conditions. Paragraphs 8 and 12 are particularly noteworthy here. Paragraph 8 states:

The Seller agrees to indemnify and save the Buyer, its agents and employees harmless from any and all expense including attorney's fees, claims, suits and liability for: (a) infringement or violation of any patent or patent right arising in connection with this agreement or from the use by the Buyer of any of the materials furnished to it by the Seller; (b) injuries to property or persons, including death, arising out of any act or omission of the Seller or its officers, agents, employees and servants; (c) any other claims, damages and liabilities which are asserted by anyone, including all claims, suits and liens for the cost of materials furnished under this contract by persons other than the Seller.

Paragraph 12 provides:

Execution of this agreement constitutes an acceptance expressly limited to the terms herein and any additional or different terms suggested by Seller are hereby rejected unless expressly agreed to in writing by Buyer. Upon acceptance by Seller, this agreement shall constitute a valid and binding contract which shall be governed and construed according to the laws of the State of Colorado (a Uniform Commercial Code state).

The reference made, in the second sentence of paragraph 12, to "acceptance by Seller" apparently alludes to the tear-off acknowledgment form included at the bottom of the purchase order. Wesco's agent, William Salagovic, signed this form on August 24, 1983 and subsequently returned it to Nielsons. However, the acknowledgment was accompanied by a list of objections to Nielson's purchase order conditions. Wesco took exception, among other conditions, to paragraph 12. Wesco insisted the matters covered in paragraph 12 would follow Wesco's quotation terms and conditions.

Soon after these forms were exchanged, Richard Krisch, a Nielsons employee, telephoned Mr. Salagovic "to advise him that Nielsons did not agree to, and rejected, the terms and conditions in Wesco's forms and that Wesco's objections and exceptions to Nielsons' Purchase Order were not acceptable." Affidavit of Richard G. Krisch, ¶ 9. Mr. Krisch further asseverated:

I made it clear to Mr. Salagovic that, as far as Nielsons was concerned, the terms and conditions in Nielsons' Purchase Order controlled the transactions between the parties. Mr. Salagovic did not disagree with me at that time, and Wesco did not subsequently respond to this call in writing or otherwise.

*Id.*, ¶ 9.

Mr. Salagovic's remembrance of the conversation is somewhat different:

Mr. Krisch expressed an objection to some of the terms and conditions contained in Wesco's order acknowledgment. I then informed Mr. Krisch that Wesco had never agreed to a sale on anything other than Wesco's terms and conditions, that Wesco was unwilling to proceed with a sale on anything other than Wesco's terms, and that the manufacture of the equipment would have to be placed "on hold" if Mr. Krisch persisted in his objections so that Wesco could analyze said objections. He then informed me that he did not desire to have the sale placed on hold, and that he wanted Wesco to proceed with manufacture.

I then informed Mr. Krisch that manufacture would proceed, pursuant to his request, upon the understanding that Wesco's terms and conditions were applicable and that Mr. Krisch's objections were withdrawn. I also informed Mr. Krisch that if he decided to renew his objections in the future, he should submit them in writing.

Wesco never received any oral or written objections from Mr. Krisch or any other representative of Nielsons subsequent to the date of said conversation.

Affidavit of William Salagovic, ¶ 8.

The legally operative effect of the series of communications between Wesco and Nielsons is to be determined by Colo.Rev. Stat. § 4–2–207, a UCC provision. That section states, in full:

**4–2–207. Additional terms in acceptance or confirmation.** (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time, operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objections to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case, the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

In applying this statute to the facts of the case, I must first decide whether there was an offer. That determination is simple. Wesco's quotation of July 7, 1983 is an offer because paragraph 5 of the quotation terms and conditions explicitly states "[t]his quotation constitutes an offer to sell."

The next question faced is whether Nielson's purchase order is an acceptance or a counteroffer. I hold it to be an acceptance.[1] Paragraph 12 of the purchase order conditions begins with this phraseology: "[e]xecution of this agreement constitutes an acceptance expressly limited to the terms herein...." This language falls squarely within the purview of § 4–2–207(1).[2] The purchase order is "[a] definite

---

**1.** Even if the purchase order were a counteroffer, the ultimate result reached in this case would be the same. A contract was established by conduct, Colo.Rev.Stat. § 4–2–207(3), even though the counteroffer did not result in a formal contract by exchange of documents. Subsequently, missing contractual terms or terms on which the parties never finally agreed, such as the scope of liability, would be filled by other UCC provisions. Here UCC §§ 2–714(3) and 2–715 would define Wesco's liability.

**2.** As noted above, I interpret the word "acceptance" as used in the second sentence of paragraph 12 to connote confirmation by the offeror (seller) through return of the acknowledgment order. Acceptance as used in the first sentence

and seasonable expression of acceptance ... sent within a reasonable time...." *Id.* The order is a direct response to Wesco's quotation offer. Moreover, the order states the same $109,000 amount as the offer.

The purchase order operates as an acceptance "even though it states terms ... different from those offered" because acceptance here was *not* expressly made conditional on assent to the different terms. Paragraph 12's language of an "acceptance expressly limited to the terms herein" does not invalidate the acceptance itself. Rather, that language merely qualifies the acceptance and limits its scope to those "terms herein." *See Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1577 (10th Cir. 1984) (adopting, as Pennsylvania law, *Dorton v. Collins & Aikman Corporation,* 453 F.2d 1161, 1168 (6th Cir.1972)).

This conclusion is buttressed by the policy behind the statute. At common law, there could be no meeting of the minds, and hence no contract, unless there was agreement on all the terms of the contract. Section 4–2–207 alters the common law rule by recognizing the existence of a contract even though certain terms remain in conflict or are unresolved. This alteration facilitates the completion of large-scale business transactions. The modification is almost a necessity in light of the way in which the American economy functions today. *See Leonard Pevar Co. v. Evans Products Co.,* 524 F.Supp. 546, 551 (D.Del. 1981) (UCC is "intended to change the common law in an attempt to conform contract law to modern day business transactions"). Comment 2 to § 4–2–207 therefore states, in relevant part, that "a proposed deal which in commercial understanding has in

fact been closed is recognized as a contract." *See also* Colo.Rev.Stat. § 4–2–204.

Wesco's offer, then, disclaimed liability for incidental and consequential damages. Quotation Terms and Conditions, ¶ 8; last sentence of ¶ 1. Paragraphs 8 and 12 of Nielsons purchase order conditions, on the other hand, differed by imposing additional liability on Wesco. Paragraph 12 ascribed to the UCC, which specifically incorporates incidental and consequential damages. *See* Colo.Rev.Stat. §§ 4–2–714(3), 4–2–715. The final query to be resolved is which, if either, set of terms should prevail.

Colo.Rev.Stat. § 4–2–207(2) does not resolve this question. Neither set of terms can become part of the contract between these two merchants if any one of the three exceptions under § 4–2–207(2) is applicable. *Steiner v. Mobil Oil Corp.,* 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751, 759 (1977).

Here, all three exceptions are operable.[3] The offer, as represented in paragraph 1 of Wesco's quotation terms and conditions, expressly limits acceptance to its terms. Thus subsection (2)(a) is met. Further, paragraph 12 of Nielsons' purchase order materially alters the terms of the contract by sharply limiting Wesco's liability for incidental and consequential damages. *See Transamerica Oil Corp. v. Lynes, Inc.,* 723 F.2d 758, 765 (10th Cir.1983) ("[a] limitation of remedy generally constitutes a material alteration"). Subsection (2)(b) is accordingly satisfied. Finally, subsection (2)(c) is properly invoked by the language of paragraph 1 of Wesco's quotation terms and conditions, which provides notification of objection. *See also* comment 6 to § 4–2–207 (objection is assumed where clauses are conflicting). I therefore need not consider the arguably genuine issues of

of paragraph 12, on the other hand, seems to indicate contractual acceptance.

**3.** My analysis here assumes subsection (2) covers "different" terms as well as "additional" terms. This assumption is supported by comment 3 to § 4–2–207 (discussing whether additional *or* different terms become part of the agreement under subsection (2)) and by *Steiner v. Mobil Corp.,* 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751, 759 n. 5 (1977) (applicability of

subsection (2) should not hinge on a "characterization of the varying terms of an acceptance as 'additional' or 'different'"). However, if this assumption is incorrect, *i.e.,* if subsection (2) only applies to "additional" terms, then subsection (2) would not cover the different terms here anyway. Thus the outcome is the same either way. I therefore need not decide the validity of my assumption.

material fact raised by the telephone call between Krisch and Salagovic. Those issues of fact, if any, do not preclude summary judgment since the first disjunctive portion of subsection (2)(c) is otherwise fulfilled.

Not having found either party's terms to be added to the contract under subsection (2), I look to subsection (3).[4] Both parties have clearly engaged in conduct which recognizes the existence of a contract. Both parties therefore press claims for breach of contract. Neither party makes a claim for quantum meruit, unjust enrichment, restitution, or any other related theory of recovery which would suggest that no contract was ever formed. Moreover, the parties do not dispute that some performance has indeed transpired. They argue only over the damages recoverable for certain breaches in contractual performance.

■ I thus find a contract to have been established, pursuant to § 4–2–207(3), by the conduct of Wesco and Nielsons. *See Cargill, Inc. v. Stafford,* 553 F.2d 1222, 1225 (10th Cir.1977) (the UCC "rejects the subjective test of intent and replaces it with mutuality of assent as manifested by the conduct of the parties"). In such a case, the missing terms of the contract are filled "with any supplementary terms incorporated under" other parts of the UCC. Section 4–2–207(3). The conflicting terms of Wesco's quotation and Nielsons' conditions eliminate each other and fall away from the contract. *Daitom,* at 1579.[5] The resulting lacuna is closed with UCC provisions. Section 4–2–207, comment 6. Here, § 4–2–714(3) and § 4–2–715 step in to fill the gap created by the dispute. *Hanford Foundry Co. v. Fuller Co.,* 38 UCC Rep. Serv. 1553, 1557 (E.D.Pa.1984) (conflicting liability disclaimer provisions cancel out; consequential damages may be collected under UCC §§ 2–714 and 2–715). Since

those provisions make allowance for incidental and consequential damages, the damages sought in Nielsons' counterclaim are proper.

Curiously enough, Wesco's briefs agree with the bulk of my conclusions. Wesco finds its quotation to have posed an offer, with Nielsons' purchase order to have constituted a corresponding acceptance. Wesco then also states a contract was formed, despite the differing terms between the quotation and the purchase order, because the purchase order was not expressly made conditional on assent to the different terms. Wesco next moves to subsection (2) and decides that provisions cannot be used in this case. I am in complete agreement up to this point.

However, Wesco further concludes its own liability disclaimer applies in the face of the nonapplicability of subsection (2). This belief is incorrect because it wholly ignores subsection (3). Wesco conducts only two-thirds of the statutory analysis. The last third of that analysis plainly injects the U.C.C. gapfiller provisions into the Wesco-Nielsons contract.

Wesco makes only one argument by way of circumventing the inexorable use of §§ 4–2–714(3) and 4–2–715. The crux of this argument, found on page 14 of Wesco's brief in support of its summary judgment motion, holds:

> As aforenoted, Nielsons' representative, Richard Krisch, signed the Purchase Order on the front, and not on the back following the Purchase Order Conditions. Further, the face of the Purchase Order does incorporate various documents such as specifications and the "Attachment to Purchase Order." If Nielsons intended to incorporate the Purchase Order Conditions appearing on the back, it could have done so expressly in the same manner

---

**4.** *See* note 5.

**5.** In *Daitom,* the Tenth Circuit, construing the UCC as incorporated into Pennsylvania law, adopted this "knock-out" rule. Conflicting terms cancel one another. The court found "the ultimate contract" to include non-conflicting terms and any other terms incorporated by the

UCC. *Id.* at 1579. The court appeared to adopt the knock-out rule under subsection (2), because it never reached a discussion of subsection (3). Regardless of whether the knock-out rule finds its home in subsection (2) or subsection (3), the outcome here is the same.

that it incorporated various other conditions. Since Nielsons' Purchase Order Condition No. 8 did not become part of Nielsons' acceptance, the only contract terms relating to liability are those incorporated in Wesco's quotation.

If this argument were correct, then the purchase order would not differ at all from the quotation, at least not with respect to Wesco's liability. The terms of the quotation would then control.[6]

■ The argument, however, has no merit. The parties certainly acted as if the purchase order conditions were a part of Nielsons' purchase order. Wesco specifically objected to those conditions in writing. Moreover, those same conditions were the subject of the telephone conversation between Krisch and Salagovic. Under § 4–2–207(3), the conduct of the parties controls in determining establishment of a contract. Here, the parties' conduct concerning the contract clearly included the purchase order conditions.

■ In addition, pure common sense defeats Wesco's argument. Wesco would have me entirely ignore the purchase order conditions simply because Nielsons' agent did not sign the particular back page on which they were printed, even though he did sign the front page. Wesco would also have me disregard the conditions because they were not specifically referred to on the facing page stamped "purchase order." Neither of these rationales carries any weight. A party need not sign every page of a document for the whole of that document to be effective.[7] Nor must the first or facing page of a package of documents necessarily incorporate by reference all the other pages in the package.[8] Wesco cites no authority for such a sweeping proposi-

tion. Certainly Nielsons did not include its statement of conditions among the purchase order documents to serve as wrapping paper. This transaction was an arms-length business deal. Every paper exchanged had some bearing on that deal. I must imbue the purchase conditions with their obvious significance.

IT IS ORDERED that Nielsons' motion for partial summary judgment is granted. Wesco's cross-motion for summary judgment is accordingly denied. This case is remanded to Magistrate Thomas in compliance with the order of reference.

---

6. Wesco cites *Phillips Petroleum Co. v. Bucyrus-Erie Co.,* 125 Wis.2d 418, 373 N.W.2d 65, 68 (Wis.App.1985), *reversed,* 131 Wis.2d 21, 388 N.W.2d 584 (Wis.1986), in support of its argument. Wesco paraphrases the relevant portion of *Phillips* as stating that the terms of the offer control where the acceptance is silent on a crucial term found in the offer. I do not dispute this legal principle. Instead, I find this argument to be inappropriate to the instant contro-

versy because Nielsons' acceptance was far from silent on the liability term.

7. I do not intend to state an automatic rule here. I of course recognize the possibility of more than one signature in certain circumstances not here present.

8. *See* note 3.