**TEXTILE UNLIMITED, INC.,**
a California corporation,
Plaintiff–Appellee,

v.

**A..BMH AND COMPANY, INC.,**
a Georgia corporation,
Defendant–Appellant.

No. 00–56358.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 2001

Filed Feb. 14, 2001

Mark M. Kassabian and Jacqueline Bruce Chinery; Jones, Day, Reavis & Pogue; Los Angeles, California, for the defendant-appellant.

William H.Y. Park, Michael Schillaci, Jeffre T. Lowe; Kwak, Kim & Park; Los Angeles, California, for the plaintiff-appellee.

Before: TROTT, THOMAS and BERZON, Circuit Judges.

THOMAS, Circuit Judge:

In this appeal, we consider, *inter alia*, the proper venue for a suit to enjoin an arbitration. Under the circumstances presented by this case, we conclude that the Federal Arbitration Act does not require venue in the contractually-designated arbitration locale.

I

Textile Unlimited, Inc. ("Textile") claims that A..BMH and Company, Inc. ("A..BMH") is, in the parlance of the industry, spinning a yarn by contending that the two companies had agreed to settle contract disputes by binding arbitration in Georgia. A..BMH counters that Textile is warping the facts.

Over the course of ten months of this tangled affair, Textile bought goods from A..BMH in approximately thirty-eight transactions. Each followed a similar pattern. Textile would send a purchase order to a broker in California containing the date, item number, item description, quantity ordered, and price. A..BMH would respond with an invoice, followed by shipment of the yarn and an order acknowledgment. Both the invoice and the order acknowledgment contained a twist: additional terms tucked into the back of the invoice and the face of the acknowledgment, terms that had not adorned Textile's purchase order. Specifically, the A..BMH documents provided:

*Terms.* All sales of yarn by A..BMH & Co., Inc. ("Seller") are governed by the terms and conditions below. Seller's willingness to sell yarn to you is conditioned on your acceptance of these Terms of Sale. If you do not accept these terms, you must notify Seller in writing within 24 hours of receiving Seller's Order Confirmation. If you accept delivery of Seller's yarn, you will be deemed to have accepted these Terms of Sale in full. You expressly agree that these Terms of Sale supersede any different terms and conditions contained in your purchase order or in any other agreement.

. . .

*Arbitration.* All disputes arising in connection with this agreement shall be settled in Atlanta, Georgia by binding arbitration conducted under the Commercial Arbitration Rules of the American Arbitration Association. The arbitrator will not be permitted to award punitive damages with respect to any dispute. Judgment upon the award rendered may be entered, and enforcement sought, in any court having jurisdiction. The total costs of arbitration, including attorneys' fees, will be paid by the losing party. *Governing Law and Venue.* This transaction shall be governed by and construed in accordance with the laws of the State of Georgia. If any court action is brought to enforce the provisions of this agreement, venue shall lie exclu-

sively in the Superior Court of Fulton County, Georgia. You expressly consent to personal jurisdiction in the Superior Court of Fulton County, Georgia, and waive the right to bring action in any other state or federal court.

Textile did not request any alterations. However, after receiving a shipment in September 1998, Textile refused to pay, alleging that the yarn was defective. A..BMH submitted the matter to arbitration in Atlanta, Georgia. The American Arbitration Association ("AAA") notified both parties on January 10, 2000, that it had received the arbitration request. Textile did not object to the arbitration within the time provided by AAA rules. Textile eventually protested, contending that the arbitration clause had not been woven into the contract. Textile also argued that the objection period should have been lengthened because the initial notice had been sent to an attorney no longer with its law firm. Textile reserved the right to challenge the jurisdiction of the AAA, and indicated that nothing in the letter should be deemed a waiver.

With arbitration looming, Textile filed an action on April 10, 2000 in the United States District Court for the Central District of California to enjoin the arbitration. Unruffled, the AAA Arbitrator found on May 5, 2000 that the case was arbitrable. On June 26, 2000, Textile moved for a stay of the arbitration pending in Georgia. On July 17, 2000, the district court preliminarily enjoined both the pending arbitration and A..BMH from any further action regarding arbitration of the dispute in question. A..BMH timely appealed the district court's order.

## II

■ The district court correctly concluded that venue was proper in the Central District of California under 28 U.S.C. § 1391. Contrary to A..BMH's arguments, nothing in the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. § 1 *et seq.*, requires that Textile's action to enjoin arbitration be brought in the district where the contract designated the arbitration to occur.

■ As the Supreme Court has recently explained, the FAA's venue provisions are discretionary, not mandatory. *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 194–96, 120 S.Ct. 1331, 1334, 146 L.Ed.2d 171 (2000). Congress enacted the FAA in 1925 against the tapestry of a restrictive general venue statute, with the intent of liberalizing venue choice. *Id.* at 1336–37. Thus, the venue provisions of the FAA do not supplant the general venue provisions of 28 U.S.C. § 1391(a); rather, they are permissive and supplement those sections. *Id.*

Of course, the Supreme Court was considering a slightly different question than the one at hand, namely, an action to vacate or modify an arbitration award under 9 U.S.C. §§ 9–11. However, the Court's analysis pertained to the FAA as a whole, and its logic is equally applicable here. 120 S.Ct. at 1336, 1339. Indeed, *Cortez Byrd Chips* instructs us to weave the various venue strands of the Act together into a seamless fabric which does not clash with other federal venue statutes. *Id.* at 1336–37. Such an analysis can only lead to a more elastic and complimentary construction of venues available under the FAA, including those founded on 28 U.S.C. § 1391 alone.

A plain reading of the section involved in this case, 9 U.S.C. § 4, supports this conclusion. It provides, *inter alia*, that a

> party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the fail-

ure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.... If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C.A. § 4 (1999).

First, on its face, § 4 provides that venue is proper for an action to compel arbitration in "any United States district court which, save for such agreement, would have jurisdiction under Title 28." That clear expression should end the argument. However, A..BMH asserts that venue any place other than the place of arbitration contractually specified is precluded by the § 4 provision that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." However, this interpretation skirts the section's plain language: by its terms, § 4 only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur. *See Continental Grain Co. v. Dant & Russell,* 118 F.2d 967, 969 (9th Cir.1941).

Second, the language of the venue provision of § 4 is less restrictive than that of the provisions the Court found permissive in *Cortez Byrd Chips.* For example, when filing an action to confirm an arbitration award, 9 U.S.C. § 9 provides that if no venue is specified in the contract "such application may be made to the United States court in and for the district within which such award was made." Section 10(a), which governs motions to vacate arbitration awards, provides that "the United States Court in and for the district wherein the award was made may make an order vacating the award." As to modifications or corrections of arbitration awards, 9 U.S.C. § 11 provides that "the United States Court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration." In contrast, § 4 allows parties to petition "any United States district court which, save for such agreement, would have jurisdiction under Title 28." As the Supreme Court noted, § 4 contained "even more obviously permissive language" than those the Court had under consideration. *Cortez Byrd Chips,* 120 S.Ct. at 1336.

Third, § 4 is narrowly tailored. By its terms, it only embraces actions to compel arbitration. Thus, injunction actions, such as the one at bar, are properly considered under general venue provisions.[1] *See First of Michigan Corp. v. Bramlet,* 141 F.3d 260 (6th Cir.1998) (holding that district court in Michigan had venue to hear petition seeking to enjoin pending arbitration in Florida under the general venue provision of 28 U.S.C. § 1391).

Finally, A..BMH also argues that allowing venue outside the potential location for arbitration violates judicial economy and would require the parties to litigate by flying shuttle between Georgia and Cali-

---

1. For this reason, A..BMH's reliance on *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323 (7th Cir.1995) is misplaced. Even assuming that *Lauer* survives *Cortez Byrd Chips,* it is factually inapposite to this case: the parties did not contest the existence of the arbitration agreement itself, and the site for arbitration had already been fixed. Textile's suit does not fit this paradigm.

fornia. Of course, this concern is only prudential, not statutory. In addition, this circumstance could be created only by A..BMH if it chose to file a separate lawsuit in Georgia while this action was pending in California. Nothing prohibits A..BMH from proceeding *seriatim* in different locales; filing a counter-claim in California to compel arbitration, *see Dupuy–Bushing Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1277–78 (5th Cir.1975); or requesting a stay under 9 U.S.C. § 3.

In sum, the district court correctly determined that venue was proper in the Central District of California. The parties do not dispute that, absent the contested interpretation of § 4's venue requirements, jurisdiction in the district court is appropriate. Venue is clearly proper under 28 U.S.C. § 1391: Textile is incorporated in the state of California, it maintains its principal place of business in the Central District of California, and A..BMH was subject to *in personam* jurisdiction in California. The venue clause on A..BMH's forms, limiting venue to Fulton County, Georgia, does not control this issue. Like the arbitration clause, the question of whether this clause is a part of the contract between the parties is at issue.

■ This result is consistent with the underpinnings of arbitration theory. One of the threads running through federal arbitration jurisprudence is the notion that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Requiring a party to contest the very existence of an arbitration agreement in a forum dictated by the disputed arbitration clause would run counter to that fundamental principle.

## III

■ The district court did not abuse its discretion in granting the preliminary injunction. *Gorbach v. Reno*, 219 F.3d 1087, 1091 (9th Cir.2000) (en banc).

■ We will reverse an order granting a preliminary injunction only if the district court abused its discretion, made an error of law, or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1233 (9th Cir. 1997). We review issues of law underlying the preliminary injunction *de novo. Id.* at 1234. The traditional equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs; and (4) advancement of the public interest. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir.1980). A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment. *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir.1984). "In this circuit, the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1201.

The district court found that Textile would suffer irreparable harm if the arbitration were not stayed, that the balance of hardships tipped in Textile's favor and that it was in the public interest to stay arbitration. These findings were not clearly erroneous, and A..BMH does not contest them on appeal.

Thus, to obtain a preliminary injunction, Textile needed only to show that serious questions were raised. The district court determined that not only were serious questions raised, but that Textile had shown a probability of success on the merits. The district court did not err in that assessment.

## A

Section 2207 of the California Commercial Code[2] controls contract interpretation when the parties have exchanged conflicting forms. *See Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443–44 (9th Cir.1986) (holding that a corresponding section of the Oregon U.C.C. statute applies in such circumstances). It provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code.

Cal. Com.Code § 2207 (West 1964).

Under § 2207(1), an acceptance will operate to create a contract even if additional or different terms are stated *unless* the acceptance is expressly conditioned on assent to the new terms. If a contract is created under § 2207(1), then § 2207(2) defines the terms of the contract. *Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 101, 141 Cal.Rptr. 157, 164, 569 P.2d 751 (Cal.1977) ("To determine the terms of [a contract formed under § 2207(1)], we turn to section 2207, subdivision (2)."). However, if the acceptance is expressly conditioned on the offeror's assent to the new terms, the acceptance operates as a counteroffer. If the counteroffer is accepted, a contract exists and the additional terms become part of the contract. *Diamond Fruit Growers*, 794 F.2d at 1443. To qualify as an acceptance under § 2207(1), an offeror must "give specific and unequivocal assent" to the supplemental terms. *Id.* at 1445. If the new provisos are not accepted, then no contract is formed. However, even when the parties' written expressions do not establish a binding agreement under § 2207(1), a contract may arise based upon their subsequent conduct pursuant to § 2207(3). *Id.*

A..BMH argues that a contract including the arbitration clause was

**2.** Both parties have consistently argued in this litigation that California law regarding the interpretation of the contract controls; thus, we will apply it. *See Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1442 n. 3 (9th Cir.1986). The choice-of-law clause selecting Georgia law does not control this claim, because it is one of the contract terms in dispute. Further, both Georgia and California have adopted U.C.C. § 2–207 verbatim. *Compare* Cal. Com.Code § 2207 (West 1964) with Ga.Code Ann. § 11–2–207 (West 2000). It is unnecessary to resolve a choice-of-law conflict where states have adopted the relevant provisions of the U.C.C. without modification. *PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.*, 225 F.3d 974, 977 n. 2 (8th Cir.2000).

formed pursuant to § 2207(1) because the fine print provided that Textile was "deemed to have accepted these terms in full" if Textile did not respond in 24 hours. This contention is foreclosed by *Diamond Fruit Growers,* because Textile did not "give specific and unequivocal assent" to the supplemental conditions. Thus, a contract containing the new terms that A..BMH attempted to pin on Textile was not formed under § 2207(1).

Part of the *Diamond Fruit Growers'* rationale was to avoid a rule which would allow one party to obtain "all of its terms simply because it fired the last shot in the exchange of forms." *Id.* at 1444. In short, modern commercial transactions conducted under the U.C.C. are not a game of tag or musical chairs. Rather, if the parties exchange incompatible forms, "all of the terms on which the parties' forms do not agree drop out, and the U.C.C. supplies the missing terms." *Id.*

A..BMH also claims that a contract formed under § 2207(1) because its acceptance was not expressly made conditional on Textile's assent to the additional or different terms. Thus, A..BMH reasons, a contract was formed under § 2207(1) and we must turn to § 2207(2) to ascertain the contract terms. However, A..BMH's assertion is belied by the plain words of its documents which provide that "Seller's willingness to sell yarn to you is conditioned on your acceptance of these Terms of Sale." Thus, A..BMH's claim is unavailing.

### B

■ Because no contract was formed under § 2207(1), our interpretation of the agreement must be guided by § 2207(3) which examines the conduct of the parties to determine whether a contract for sale has been established and the terms thereof. The parties do not dispute that through their actions, they formed a contract under § 2207(3).

The terms of an agreement formed pursuant to § 2207(3) are those terms upon which the parties expressly agreed, coupled with the standard "gap-filler" provisions of Article Two. The U.C.C. does not contain a "gap-filler" provision providing for arbitration. *See C. Itoh & Co. (America) Inc. v. Jordan Int'l Co.,* 552 F.2d 1228, 1236–37 (7th Cir.1977); *see generally Dresser Indus., Inc., Waukesha Engine Div. v. Gradall Co.,* 965 F.2d 1442, 1450–52 (7th Cir.1992) (discussing gap-filler provisions and supplementary terms under § 2–207(3)).

Under § 2207(3), the disputed additional items on which the parties do not agree simply "drop out" and are trimmed from the contract. *Diamond Fruit Growers,* 794 F.2d at 1445. Thus, the supplemental terms proposed by A..BMH, including the arbitration clause, do not festoon the contract between the parties.

### C

■ Finally, contrary to A..BMH's assertions, Textile did not waive its objection to arbitration by failing to object within the time period specified in the arbitration rules. Because Textile never entered into an arbitration agreement, the district court correctly found that Textile did not forgo its right to contest the arbitration by neglecting to timely object. Textile cannot be said to have relinquished a right under a set of rules to which it never agreed.

A..BMH's reliance on *Fortune, Alsweet and Eldridge, Inc. v. Daniel,* 724 F.2d 1355 (9th Cir.1983), is misplaced. In *Fortune,* the plaintiff *participated* in the arbitration proceedings on the merits of the dispute and did not like the final results. *Id.* at 1357. The plaintiff then failed to move to vacate the award within the specified time, and the court held that he had thereby waived his objection to the arbitration. *Id.* In this case, Textile only participated in the arbitration to contest the arbitration itself. In so doing, Textile did not waive its objection to the arbitration.

## IV

In sum, this action was properly venued in the Central District of California. The district court did not abuse its discretion in granting the preliminary injunction. To the contrary, the district court's reasoning was correct in all respects.

**AFFIRMED.**