**MONTANANS FOR COMMUNITY DEVELOPMENT, Plaintiff,**

**v.**

**Jonathan MOTL, in his official capacity as Commissioner of Political Practices; Timothy Fox, in his official capacity as Attorney General of the State of Montana, and Leo Gallagher, in his official capacity as Lewis and Clark County Attorney, Defendants.**

**No. CV 14–55–H–DLC.**

United States District Court, D. Montana, Helena Division.

Signed Oct. 22, 2014.

---

**51.** (Doc. 3.)

Anita Y. Milanovich, Bopp Law Firm, PC, Bozeman, MT, for Defendants.

## ORDER

DANA L. CHRISTENSEN, Chief Judge.

### I. Introduction

Plaintiff Montanans for Community Development ("MCD") seeks a preliminary injunction enjoining Defendants Jonathan Motl, Timothy Fox, and Leo Gallagher from enforcing laws that rely on MCA § 13–1–101(22), ARM 44.10.327, MCA § 13–1–101(11)(a), ARM 44.10.323, MCA § 13–1–101(7)(a)(i), ARM 44.10.321, MCA § 13–37–111, and ARM 44.10.307(3) and (4) (collectively referred to as "Montana's election disclosure laws"). If the Court grants the injunctive relief MCD requests, and finds Montana election disclosure laws unconstitutional, MCD intends to mail two

flyers featuring Montana House of Representative candidates from the Billings area between now and the November 4, 2014 midterm election.

The relief requested by MCD is breathtaking in its scope, and if the Court was to grant this relief, on the eve of the midterm election, it would leave the Montana Commissioner of Political Practices ("COPP") with essentially no laws to enforce, and no powers of enforcement. As explained below, the Court declines to do so.

MCD's motion for preliminary injunction is denied. Montana's political committee definitions and disclosure requirements are constitutional on their face and as applied to MCD. In Montana, the public's right to know who is financing political campaigns vastly outweighs the minimal burden imposed by the political committee disclosure requirements. None of the preliminary injunction factors weigh in favor of MCD, and therefore, its motion must be denied.

### II. Background

#### A. Procedural History

On September 3, 2014, MCD filed a verified complaint for declaratory and injunctive relief followed by a motion for a preliminary injunction, and a motion to expedite. (Doc. 1; doc. 3; doc. 5.) After a hearing date was set by United States Magistrate Judge Jeremiah C. Lynch, MCD filed a motion requesting that the undersigned conduct the preliminary injunction hearing in order to avoid any delay associated with Local Rule 72.3. (Doc. 14.) The Court accommodated MCD's requests and a preliminary injunction hearing was held before the undersigned on October 1, 2012.[1]

---

1. The Court notes that the Verified Complaint for Declaratory and Injunctive Relief and Plaintiff's Motion for Preliminary Injunction

and supporting memorandum were not filed until September 3, 2014. Briefing on the preliminary injunction motion was not com-

### B. Montanans for Community Development

MCD is a 501(c)(4) tax-exempt non-profit corporation incorporated in Montana with its principal place of business in Helena, Montana. MCD's avowed mission is "to promote and encourage policies that create jobs and grow local economies throughout Montana." (Doc. 1 at 9.) MCD has a board of directors comprised of three individuals, only two of which have been disclosed and are known to the Court.

On August 28, 2014, MCD's board of directors held a meeting where they decided to circulate two flyers that mention Montana House of Representatives candidates. One flyer includes a photo of Joshua Sizemore, who is a candidate for House District 47. The second flyer includes a photo of Mary McNally, a candidate up for re-election in House District 49. Both flyers express support for the agenda of the Institute for 21st Century Energy and criticize "environmentalists." (Doc. 1, exhibit 6.)[2] MCD does not intend to report its spending on these flyers to the Commissioner. (Doc. 1 at 10.) MCD will not mail these flyers if it is required to comply with Montana's election disclosure laws. (Doc. 1 at 14.)

### C. Montana Political Committee Laws

In Montana, a political committee is defined as:

a combination of two or more individuals or a person other than an individual who makes a contribution or expenditure:

(a) to support or oppose a candidate or a committee organized to support or oppose a candidate or a petition for nomination; or

(b) to support or oppose a ballot issue or a committee organized to support or oppose a ballot issue; or

(c) as an earmarked contribution.

Mont.Code Ann. § 13–1–101(22)(2013). A "person means an individual, corporation, association, firm, partnership, cooperative, committee, club, union, or other organization or group of individuals." MCA § 13–1–101(20). Under the political committee umbrella in Montana there are three specific committee types: principal campaign committees, independent committees, and incidental committees. Admin. R. Mont 44.10.327(1). An expenditure is defined as "a purchase, payment, distribution, loan, advance, promise, pledge, or gift of money or anything of value made for the purpose of influencing the results of an election." MCA § 13–1–101(11)(a). Expenditure includes, but is not limited to, various expenses, payments, and other types of expenditures. ARM 44.10.323. A contribution is defined, in part, as "an advance, gift, loan, conveyance, deposit, payment, or distribution of money or anything of value to influence an election." MCA § 13–1–101(7)(a)(i). Contribution includes, but is not limited to, various purchases, payments, candidate self-fund-

---

pleted until September 29, 2014. The hearing was held two days later, which was just over one month before the November 4, 2014 midterm election. The Court can think of no reason why the complaint and injunction motion could not have been filed by MCD months ago, thus obviating the need for this last minute urgency.

**2.** Neither individual is expressly described as a legislative candidate in the two flyers.

Joshua Sizemore is favorably described as a "local leader ... promoting pro-growth policies that will develop resources and create jobs right here in Billings." In the second flyer, Mary McNally is derogatorily described as an environmental extremist fighting "progress at every turn." MCD contends that it is mere coincidence that these two individuals also happen to be legislative candidates.

ing, and in-kind contributions. ARM 44.10.321. MCD alleges that both the statutory and regulatory definitions of political committee, expenditure, and contribution are overbroad, vague, and unconstitutional.

### D. Montana Commissioner of Political Practices Laws

In Montana, the COPP is "responsible for investigating all of the alleged violations of the election laws," MCA § 13–37–111(1). Upon completion of such investigation, the Commissioner "shall prepare a written summary of facts and statement of findings, which shall be sent to the complainant and the alleged violator," ARM 44.1.307(3), and "a filed complaint and the summary of the facts and statement of findings shall be public record," ARM 44.10.307(4). MCD alleges that the investigatory procedures and publication provisions are unconstitutional.

### III. Discussion

### A. Standing and Ripeness

■ MCD bears the initial burden of establishing standing to proceed in this case by showing: (1) it has suffered an injury in fact, (2) that was caused by Defendants, and (3) the likelihood that the injury can be redressed by a favorable ruling. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir.2010). The ripeness inquiry regarding whether a case or controversy exists requires the same analysis as the injury-in-fact prong of the standing analysis. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Consistent with the majority of courts, this Court will analyze First Amendment case or controversy issues on the basis of standing.

■ MCD can establish an injury in fact when challenging a law prior to enforcement by "demonstrating a realistic danger of sustaining a direct injury as a result of

the statute's operation or enforcement." *Lopez*, 630 F.3d at 785, quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). To demonstrate a realistic danger, plaintiff must allege an intention to engage in conduct arguably impacted by a constitutional interest, but prohibited by statute, and a credible threat of prosecution. *Id.*

■ To determine if a plaintiff has established a credible threat of injury, courts will consider: (1) whether a pre-enforcement plaintiff has failed to show a reasonable likelihood that the government will enforce the challenged law against it; (2) whether plaintiff has established its intent to violate the challenged law in some detail; and (3) whether the challenged law is inapplicable to plaintiff by its terms or as interpreted by the government. *Id.* at 786. Credible threats of enforcement can include past enforcement against the plaintiff, specific warnings or threats to initiate proceedings under the challenged regulations, or a history of past enforcement under the challenged regulations against similarly situated parties. *Id.* Plaintiff's intent to violate the law must be demonstrated by a concrete plan detailing its future speech. *Id.* Demonstrated plans to distribute flyers regarding a specific ballot initiative or mail postcards criticizing a candidate's position on an issue have been sufficient to satisfy the intent to violate factor. *ACLU v. Heller*, 378 F.3d 979, 984 (9th Cir.2004); *National Ass'n for Gun Rights, Inc. v. Murry*, 969 F.Supp.2d 1262 (D.Mont.2013) ("*NAGR* ").

■ MCD has standing in the instant case as a pre-enforcement litigant. Defendants allege that MCD suffers from organizational defects under Montana corporate laws which preclude it from pursuing this case. To the extent that MCD may have

had some procedural abnormalities in its formation, the Court finds that at the time the instant suit was filed MCD was a corporation duly organized under Montana law and that its board of directors authorized the proposed speech and commencement of this suit.

The Court must then determine if MCD has shown a reasonable likelihood that Defendants will enforce the challenged law against it. MCD points to the fine leveled against another entity, American Tradition Partnership ("ATP"), in 2013 for failing to report expenses associated with its issue ad. (Doc. 1 at ¶ 31.) MCD also alleges that COPP's subsequent investigations and civil actions taken against candidates who allegedly benefitted from ATP's issue ads, and letters from COPP to other issue advocacy groups warning about such spending, shows a reasonable likelihood that Defendants will enforce the challenged law. (Doc. 1 at ¶¶ 33, 34.)

While the Court does not intend to issue an advisory opinion in this case, close calls regarding pre-enforcement First Amendment cases tilt dramatically toward a finding of standing. Thus, the Court finds that the MCD's intended speech falls within the reach of Montana's political committee laws such that MCD has a well-founded fear that the challenged law will be enforced against it.

MCD has likewise met the remaining two credible threat of injury factors. MCD has alleged adequate details of its planned speech, including its intent to send flyers to people in the Billings area between now and the 2014 midterm election. Lastly, the parties agreed at the hearing that MCD likely falls within the reach of the challenged laws by their terms or by application.

## B. Facial Constitutionality

MCD alleges that the laws underlying Montana campaign finance regulations are facially unconstitutional based on both overbreadth and vagueness grounds. MCD asserts that Montana's definition of political committees is both overbroad and vague and therefore should not be applied. MCD further asserts that Montana's definitions of expenditure and contribution are vague and should likewise not be applied. These are broad allegations implicating a substantial portion of Montana's long-standing election laws.

### 1. Degree of Scrutiny

█ "[A] campaign finance disclosure requirement is constitutional if it survives exacting scrutiny, meaning that it is substantially related to a sufficiently important governmental interest." *NAGR,* 969 F.Supp.2d at 1267; quoting *Human Life of Washington v. Brumsickle,* 624 F.3d 990, 1005 (9th Cir.2010). The parties agreed at the hearing that exacting scrutiny applies to most of this case; however as to the COPP investigatory procedures and publication provisions, MCD asserts strict scrutiny should apply. The challenged COPP laws are necessary for Defendants to regulate the compliance of groups and candidates with Montana's election laws. "Defendants' interest in enforcing Montana's political committee disclosure and reporting laws is sufficiently important to meet the exacting scrutiny standard." *NAGR,* 969 F.Supp.2d at 1267. Similar to disclosure requirements, the COPP investigatory and publication laws only burden speech, they do not prevent it; therefore strict scrutiny is not required. See *Brumsickle,* 624 F.3d at 1005.

### 2. Governmental Interest

█ The public's interest in disclosure by political groups is at least sufficiently important under exacting scrutiny, if not compelling under strict scrutiny. *Alaska Right to Life Comm. v. Miles,* 441 F.3d

773, 793 (9th Cir.2006). The government's interest in disclosure requirements includes providing voters with information, deterring actual corruption or the appearance thereof, and gathering data necessary to enforce election restrictions. *Id.* Courts have held that the government's interest in disclosure requirements satisfies exacting scrutiny, noting "the increased 'transparency' engendered by disclosure laws enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Brumsickle,* 624 F.3d at 1008 (quoting *Citizens United v. Federal Election Commission,* 558 U.S. 310, 371, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010); *NAGR,* 969 F.Supp.2d at 1270–71; *Canyon Ferry Road Baptist Church of East Helena v. Unsworth,* 556 F.3d 1021 (9th Cir.2009)).

Defendants' interest in enforcing Montana's political election disclosure laws and COPP's investigatory and publication laws is sufficiently important to meet the exacting scrutiny standard. The Commissioner's office receives many inquiries each election season from a variety of interested citizens, candidates, reporters, and others regarding spending in Montana elections. It is clear that Montanans are keenly interested in who is underwriting political candidate and issue campaigns. The increased transparency created by enforcement of public disclosure is sufficiently important to meet exacting scrutiny.

### 3. Substantial Relationship

■ The exacting scrutiny inquiry then turns to whether Montana's political committee disclosure laws and COPP's investigatory and publication laws bear a substantial relationship to the important interests of the Defendants. MCD alleges that the political committee definition is overbroad in that it is applied to groups opposing or promoting a candidate or ballot issue and is not limited to groups having a major or primary purpose of political advocacy. Defendants assert that the definition meets exacting scrutiny, that this Court has already upheld the challenged law against an overbreadth argument in *NAGR,* and that any overbreadth is not substantial. MCD also alleges that the political committee laws, including the definitions of expenditure and contribution, are unconstitutionally vague, specifically pointing to the alleged vagueness of the phrase "influencing an election." Defendants assert that the Court must consider any limiting instruction from a state court or enforcement agency to avoid a vague construction, and that the courts and the COPP both use the same definition of "influencing an election," being "those expressly advocating a candidate or ballot issue, and those that clearly identify a candidate or ballot issue and have no reasonable interpretation other than promoting or opposing the same." (Doc. 23 at 19.)

### a. Political Committees

■ Facial invalidation is strong medicine to be used hesitatingly and as a last resort. *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). In a First Amendment overbreadth challenge, the overbreadth must be substantial and the statute must pose a realistic danger of infringing First Amendment speech of parties not before the Court to permit invalidation. *Board of Airport Com'rs of City of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). This Court has upheld MCA § 13–1–101(22) and ARM 44.10.327 as facially valid for three reasons: (1) the Ninth Circuit Court of Appeals did not find these laws overbroad or vague when challenged in *Canyon Ferry,* (2) Montana's incidental politi-

cal committee definition is not overbroad, and (3) Montana's political committee disclosure laws do not substantially and unnecessarily chill plaintiff's speech. *NAGR,* 969 F.Supp.2d 1262.

Montana law defines political committee as an association making a contribution or expenditure to support or oppose a candidate and/or ballot issue. MCA § 13–1–101(22). The Supreme Court has upheld a statute using the words "opposes" and "support" as sufficiently clear so as to avoid vagueness. *McConnell v. FEC,* 540 U.S. 93, 184, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003). Under *Brumsickle,* the Ninth Circuit does not require that an entity have the major purpose of political advocacy to be a political committee. Further, *Brumsickle* found that the word "primary" or its equivalent is not constitutionally necessary under exacting scrutiny. In *NAGR,* this Court held that Montana's definition of incidental committee was not substantially overbroad. Given that the incidental committee definition is the broadest of the political committee definitions, MCD's argument that the political committee laws as a whole are overbroad and vague is without merit.

The political committee disclosure and reporting requirements are substantially related to Defendants' important interests. Like the disclosure requirements in *Brumsickle,* the disclosure obligation increases commensurate with the amount of political involvement by the committee. MCD argues that its potential disclosure requirements would be onerous. However, MCD also concedes that it would be considered an incidental political committee. Incidental committees are only required to include basic information on forms that take a few minutes to complete. The interest of Montana voters in transparent political funding outweighs the minimal burden imposed by the disclosure requirements.

**b. Expenditure and Contribution**

"A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement." *Tucson Woman's Clinic v. Eden,* 379 F.3d 531, 555 (9th Cir.2004) (citations omitted). "Nevertheless, perfect clarity is not required even when a law regulates protected speech." *Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1150 (9th Cir.2001). To avoid a vague construction the Court must consider both state court or enforcement agency limiting instructions. *Hoffman Estates v. Flipside,* 455 U.S. 489, 494, n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Plaintiff argues that the term "influence," as used in the statutory and regulatory definitions of expenditure and contribution, is vague.

The COPP has interpreted "influence" over the last 18 years using the express advocacy of a candidate or ballot issue standard. The express advocacy standard arose in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) wherein the Court construed the statutory definition of "expenditure" to apply "only to expenditures for communications that in express terms advocate the election or defeat of a clearly identified candidate for federal office." *Id.* at 44, 96 S.Ct. 612. The Ninth Circuit later rejected the requirement of specific "magic words" to find express advocacy under *Buckley. Federal Election Comm'n v. Furgatch,* 807 F.2d 857 (9th Cir.1987). Instead, the Court concluded that speech could be express advocacy if, when read as a whole, it was susceptible to no other reasonable interpretation but as an exhortation to vote for or against a specific candidate. *Id.* at 864. The Supreme Court upheld this functional equivalent of an express advocacy standard in *McConnell v. Federal Election*

*Comm'n,* 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003). Then, in *Federal Election Comm'n v. Wisconsin Right to Life ("WRTL"),* the Court held that "a court should find that an ad is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *WRTL,* 551 U.S. 449, 469–470, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007).

Accordingly, this functional equivalent of express advocacy is the test COPP has applied to the content of challenged communications in determining whether they are express advocacy. This consistent application from the enforcing agency serves to avoid a vague construction. This Court therefore finds the statutes and regulations to be constitutional. Requiring disclosure and reporting for expenditures and contributions based upon the functional equivalent of an express advocacy test for "influencing an election" is substantially related to the government's important interests.

### c. Commissioner of Political Practices Laws

MCD also challenges Montana's COPP's investigative procedures and publication provisions. These laws serve as the enforcement mechanism to the disclosure requirements. The 1972 Montana Constitution contains a strong "right to know" provision which states "No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." Mont. Const. Art. II, § 9. Thus, in Montana, disclosure of COPP records, when appropriate, serves both an important governmental interest and a constitutional mandate.

The COPP operates pursuant to a confidentiality policy, which provides that investigative documents, files, and information are not generally disclosed to the public unless they fall under an exception set forth in the confidentiality policy. The policy also provides for a process by which to resolve disclosure disputes. Without an investigative procedure and publication provision, the COPP would be unable to carry out its mandated duty to enforce Montana's election laws. Thus, the challenged COPP laws are substantially related to the important governmental interest in enforcing Montana's election disclosure laws.

### C. As–Applied Constitutionality

MCD may prevail on an as-applied challenge if it can demonstrate a reasonable probability that disclosure of contributor names will expose them to threats, harassment, or reprisal from either Government officials or private parties. *Citizens United,* 558 U.S. 310, 130 S.Ct. 876. MCD can also prevail on an as-applied challenge by showing it cannot comply with disclosure law requirements. *Brumsickle,* 624 F.3d at 1022.

However, MCD has not provided any evidence to suggest that it could not readily comply with Montana's disclosure and reporting requirements if it chooses to do so. Additionally, MCD does not allege that disclosure of its contributor names will expose them to any threats, harassment, or reprisal. Instead, MCD argues that because its flyers reference individuals who also happen to be legislative candidates, it can be unconstitutionally considered a political committee by virtue of the "support or oppose a candidate" language. As previously discussed, the "support or oppose" language is not unconstitutionally overbroad or vague in the context of Montana's political committee laws; it is not

unconstitutional as-applied to MCD's proposed political activity.

## IV. Preliminary Injunction Factors

■■■■ MCD, as the party seeking a preliminary injunction, must establish: (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). A preliminary injunction is an extraordinary remedy not awarded as a matter of right. *Id.* at 22, 129 S.Ct. 365. It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir.2001). Even in a First Amendment case, petitioner must make a showing as to all four factors. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir.2011).

### A. Likelihood of Success

MCD is not likely to succeed on the merits of its facial or as-applied challenges to Montana's disclosure laws or its challenge to COPP's investigatory and publication procedure laws. Montana's definitions of political committees, contributions, and expenditures are not unconstitutional on their face under *Brumsickle*, or as applied to MCD's intent to distribute political flyers. COPP's investigatory and publication procedure laws meet the exacting scrutiny standard and are thus constitutional. This factor weighs against an injunction.

### B. Irreparable Harm

MCD can show irreparable injury by establishing the existence of a colorable First Amendment claim. *Sammartano v.* *First Judicial District Court*, 303 F.3d 959, 973 (9th Cir.2002) (citations omitted). Although, if MCD is unlikely to succeed on the merits, a preliminary injunction is not warranted even if irreparable harm is possible. *Paramount Land v. California Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir.2007).

MCD presents similar issues in the instant case to those presented in *NAGR*. Similar to the plaintiff in *NAGR*, MCD's intended speech here is not prohibited by Montana's election disclosure laws. MCD conceded at the hearing that if it were to be classified as a political committee in Montana it would be an incidental committee. Therefore, MCD is presented with a choice. It may register as an incidental political committee prior to sending out the flyers; it may send the flyers without registering and face possible repercussions from the COPP; or it can abstain from sending out the flyers. If MCD chooses to comply with Montana's election disclosure laws before sending the flyers, it is unlikely to be the subject of a COPP complaint and investigation. Even if MCD is subject to a complaint and investigation, the current COPP confidentiality policy serves to protect entities such as MCD while balancing the government's interest in investigating and enforcing Montana's election disclosure and reporting laws and Montana's constitutional "right to know" mandate. Balancing the modest burden of disclosure against the public's interest in transparent campaign spending, this factor also weighs against an injunction.

### C. Balance of Equities

In cases where serious First Amendment questions are raised, the balance of hardships tips sharply in favor of the plaintiff. *Sammartano*, 303 F.3d at 973. If the irreparable harm seriously infringes on First Amendment rights, a lesser likeli-

hood of success can still warrant a preliminary injunction. *Id.* at 974.

The first two factors, likelihood of success and the possibility of irreparable harm, both weigh against an injunction in this case. Based upon the merits of MCD's request, the balance of equities here favors the rights of Montana voters over the potential disclosure burdens facing MCD.

## D. Public Interest

A preliminary injunction serves as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.,* 240 F.3d at 786. The Ninth Circuit has recognized that the public has a substantial interest in a stable electoral system in the final weeks leading to an election. *Lair v. Bullock,* 697 F.3d 1200, 1202 (9th Cir.2012).

Enjoining Defendants from implementing political committee disclosure laws as well as enjoining them from investigating or publishing any potential violation of election laws would dramatically alter the status quo. The breadth of what MCD is asking, on the eve of the midterm election, is staggering. The public interest is clearly best served by denying a preliminary injunction in this case.

## V. Conclusion

Because Plaintiff has not made an adequate showing on all four preliminary injunction factors, it is not entitled to a preliminary injunction. Therefore, IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction (doc. 3) is DENIED.